BROWNING NICHOLS vs. H. WALTER and others.

July 25, 1887.

Constitution— Special Legislation — Removal of County-Seat.— Laws 1885, c. 272, providing a mode for removing county-seats, is unconstitutional and void, as in the nature of special legislation, and not uniform in its operation throughout the state, and so in violation of subdivision 5 of section 33, and of section 34 of article 4, of the constitution.

Same.—The provisions of the constitution referred to (adopted in 1881) abrogated the provisions of section 1 of article 11 of the constitution, so far as they relate to the removal of county-seats.

The plaintiff, a citizen, freeholder, and tax-payer of the county of Lac qui Parle, brought this action in the district court for that county, to restrain the defendants, who are the county officers, from remov-

ing the county-seat from Lac qui Parle to Madison. A temporary writ of injunction was granted by a court commissioner. The defendants answered, setting out proceedings had under the provisions of Laws 1885, *c.* 272, by which the county-seat was changed from Lac qui Parle to Madison. Plaintiff appeals from an order by *Brown*, J., dissolving the injunction.

*Cole, Bramhall & Morris,* for appellant, cited *City of Topeka* v. *Gillett,* 32 Kan. 431, 436; *State* v. *Mitchell,* 31 Ohio St. 592, 607; *Devine* v. *Commrs.,* 84 Ill. 590; *State* v. *Hammer,* 42 N. J. Law, 435; *Smith* v. *Judge,* 17 Cal. 547; *State* v. *Herrmann,* 75 Mo. 340; *People* v. *Cooper,* 83 Ill. 585, 591; *State* v. *Judges,* 21 Ohio St. 1, 11; *Scowden's Appeal,* 96 Pa. St. 422; *Rutgers* v. *New Brunswick,* 42 N. J. Law, 51; *People* v. *Albertson,* 55 N. Y. 50, 55; *Division of Howard Co.,* 15 Kan. 194; *Com.* v. *Patton,* 88 Pa. St. 258; *Wheeler* v. *Philadelphia,* 77 Pa. St. 338; *Kilgore* v. *Magee,* 85 Pa. St. 401; *Desmond* v. *Dunn,* 55 Cal. 242, 251; *Earle* v. *Board,* Id. 489; Cooley, Const. Lim. 178, 179, note 1; *Warren* v. *Mayor,* 2 Gray, 84; *Slauson* v. *City of Racine,* 13 Wis. 398; *State* v. *Commrs.,* 5 Ohio St. 497, 507; *Allen* v. *Louisiana,* 103 U. S. 80; *Eckhart* v. *State,* 5 W. Va. 515; *Cowing* v. *Peterson,* 36 Minn. 130, (30 N. W. Rep. 461.)

*J. D. Springer* and *Kerr & Richardson,* for respondents.

Laws 1885, *c.* 272, is constitutional. Cooley, Const. Lim. (5th Ed.) pp. 482, 153, 154, notes and cases cited; Sedgwick, Stat. and Const. Law, (2d Ed.) notes on pp. 528–30, 534–6 and cases cited; *State* v. *Berka,* 20 Neb. 375, (30 N. W. Rep. 267;) *State* v. *Graham,* 16 Neb. 74, (19 N. W. Rep. 470;) *City of New Orleans* v. *Kaufman,* 29 La. An. 283; *Wheeler* v. *Philadelphia,* 77 Pa. St. 338; *Allen* v. *Hirsch,* 8 Ore. 412; *Ex parte Wells,* 21 Fla. 280; *Welker* v. *Potter,* 18 Ohio St. 85; *Bourland* v. *Hildreth,* 26 Cal. 161; *Brooks* v. *Hyde,* 37 Cal. 366; *Jackson* v. *Shawl,* 29 Cal. 267; *State* v. *Parkinson,* 5 Nev. 15; *Ensworth* v. *Albin,* 46 Mo. 450; *Smith* v. *Judge,* 17 Cal. 547; *McAunich* v. *Miss. & Mo. R. Co.,* 20 Iowa, 338; *Herrick* v. *Minn. & St. Louis Ry. Co.,* 31 Minn. 11; *U. S. Ex. Co.* v. *Ellyson,* 28 Iowa, 370; *Haskell* v. *City of Burlington,* 30 Iowa, 232; *Iowa R., etc., Co.* v. *Soper,* 39 Iowa, 112; *Ex parte Lichtenstein,* 67 Cal. 359; *Van Riper* v. *Parsons,* 40 N. J. Law, 123; *Anderson* v. *City of Trenton,* 42 N. J. Law, 486; *Unity*

v. *Burrage*, 103 U. S. 447; 1 Kent's Comm. (12th Ed.) 460; Potter's Dwarris on Statutes, 50; 2 Abbott's Law Dict. 500; 1 Cooley's Blackstone, 86, notes; *State* v. *Lean*, 9 Wis. 279; *Von Phul* v. *Hammer*, 29 Iowa, 222; *Nelson* v. *McArthur*, 38 Mich. 204; *Matter of N. Y. Elevated R. Co.*, 70 N. Y. 327; *People* v. *Chautauqua*, 43 N. Y. 10; *Village of Winooski* v. *Gokey*, 49 Vt. 282; *Georgia R. Co.* v. *Ivey*, 73 Ga. 499; *Heridia* v. *Ayres*, 12 Pick. 334, 344; *Calking* v. *Baldwin*, 4 Wend. 667, (21 Am. Dec. 168;) *McLain* v. *Mayor*, 3 Daly, 32; *People* v. *Davis*, 61 Barb. 456; *Pierce* v. *Kimball*, 8 Greenl. 54, (23 Am. Dec. 537;) *Burnham* v. *Webster*, 5 Mass. 266; *Brown* v. *State*, 73 Ga. 38; *State* v. *Mitchell*, 31 Ohio St. 592; *State* v. *Herrmann*, 75 Mo. 340; *Earle* v. *Board of Ed.*, 55 Cal. 489; *State* v. *Hammer*, 42 N. J. Law, 435; *Devine* v. *Commissioners*, 84 Ill. 590; *Scowden's Appeal*, 96 Pa. St. 422; *Hingle* v. *State*, 24 Ind. 28; *Goodrich* v. *Winchester, etc., Co.*, 26 Ind. 119; *Groesch* v. *State*, 42 Ind. 547; *Hanlon* v. *Commissioners*, 53 Ind. 123; *Ex parte Smith*, 38 Cal. 702; *Brooks* v. *Hyde*, 37 Cal. 367; *People* v. *Judge*, 17 Cal. 548; *State* v. *Reitz*, 62 Ind. 159; *McCormick* v. *Rusch*, 15 Iowa, 127, (83 Am. Dec. 401;) *State* v. *King*, 37 Iowa, 462; *Cricket* v. *State*, 18 Ohio St. 9.

But even if the proviso and the clause prohibiting the submission of the question in five years in case of an adverse vote were conceded to be in conflict with the constitution, they are independent and separable provisions of the act, and the remainder can stand by itself and be enforced. *Mobile & O. R. Co.* v. *State*, 29 Ala. 573; *South, etc., R. Co.* v. *Morris*, 65 Ala. 193; *Lowndes Co.* v. *Hunter*, 49 Ala. 507; *Ex parte Pollard*, 40 Ala. 77; *Powell* v. *State*, 72 Ala. 194, (14 Cent. Law J. 134;) *Morrison* v. *State*, 40 Ark. 448; *State* v. *Wheeler*, 25 Conn. 290; *Berlin* v. *New Britain*, 9 Conn. 175; *Tripp* v. *Overocker*, 7 Col. 72; *Com.* v. *Owen*, Id. 467, (4 Pac. Rep. 795;) *Coulter* v. *Board*, 9 Col. 258, (11 Pac. Rep. 199;) *People* v. *Hill*, 7 Cal. 97; *Rood* v. *McCargar*, 49 Cal. 117; *Robinson* v. *Bidwell*, 22 Cal. 379; *People* v. *McCreary*, 34 Cal. 432; *Maclay* v. *Love*, 25 Cal. 368, (85 Am. Dec. 133;) *Mills* v. *Sargent*, 36 Cal. 379; *Ex parte Frazer*, 54 Cal. 94; *Ex parte Wells*, 21 Fla. 280; *State* v. *Brown*, 19 Fla. 563; *McConihe* v. *McMurray*, 17 Fla. 238; *Mayor* v. *State*, 4 Ga. 26; *Robinson* v. *Bank of Darien*, 18 Ga. 65; *McArthur* v. *State*, 69 Ga. 444; *Prothro* v.

*Orr*, 12 Ga. 36; *McCulloch* v. *State*, 11 Ind. 424; *Armstrong* v. *Jackson,* 1 Blackf. 374, 210, (12 Am. Dec. 225;) *Clark* v. *Ellis*, 2 Blackf. 8; *Board of Commrs.* v. *Silvers*, 22 Ind. 491; *Meshmeier* v. *State*, 11 Ind. 482; *Maize* v. *State*, 4 Ind. 342; *Madison, etc., R. Co.* v. *Whiteneck*, 8 Ind. 217; *State* v. *Newton*, 59 Ind. 173; *Nelson* v. *People*, 33 Ill. 390; *Knox Co.* v. *Davis*, 63 Ill. 405; *Myers* v. *People*, 67 Ill. 503; *People* v. *Brown,* 11 Ill. 478; *Willard* v. *People*, 4 Scam. 461; *Eells* v. *People*, Id. 498; *Santo* v. *State*, 2 Iowa, 165, (63 Am. Dec. 487;) *Wier* v. *Cram*, 37 Iowa, 649; *Ely* v. *Thompson*, 3 A. K. Marsh. 70; *Turner* v. *Commrs.*, 27 Kan. 314; *Williams* v. *Payson*, 14 La. An. 7; *Moore* v. *City of New Orleans*, 32 La. An. 726; *Andrews* v. *Saucier*, 13 La. An. 301; *State* v. *Exnicios*, 33 La. An. 253; *State* v. *Crowley*, Id. 782; *Com.* v. *Hutchings*, 5 Gray, 482; *Com.* v. *Clapp*, Id. 97; *Com.* v. *Pomeroy*, Id. 486; *Fisher* v. *McGirr*, 1 Gray, 1, (61 Am. Dec. 381;) *Warren* v. *Mayor,* 2 Gray, 84; *Wellington et al., Petitioners*, 16 Pick. 87, (26 Am. Dec. 631;) *Com.* v. *Kimball*, 24 Pick. 359, (35 Am. Dec. 326;) *Norris* v. *City of Boston*, 4 Met. 282, 288; *Mundy* v. *Monroe*, 1 Mich. 68; *Cargill* v. *Power*, Id. 369; *Carleton* v. *People*, 10 Mich. 250; *Atty. Gen.* v. *Ames*, 27 N. W. Rep. 571; *O'Brien* v. *Krenz*, 36 Minn. 136, (30 N. W. Rep. 458;) *Miss. & R. R. Boom Co.* v. *Prince*, 34 Minn. 79, (24 N. W. Rep. 361;) *State* v. *District Court*, 33 Minn. 235, (22 N. W. Rep. 625;) *State* v. *Kinsella*, 14 Minn. 395, (524;) *Yarmouth* v. *North Yarmouth*, 34 Me. 411, (56 Am. Dec. 666;) *Davis* v. *State*, 7 Md. 151, (61 Am. Dec. 331;) *State* v. *Co. Commrs.*, 29 Md. 516, 521; *Mayor* v. *Dechert*, 32 Md. 369; *Berry* v. *Balt., etc., R. Co.*, 41 Md. 446; *Regents, etc.,* v. *Williams*, 9 Gill & J. 365, (31 Am. Dec. 72;) *State* v. *Clarke*, 54 Mo. 17; *City of St. Louis* v. *St. Louis R. Co.*, 14 Mo. App. 221; *Brown* v. *Beatty*, 34 Miss. 227, (69 Am. Dec. 389;) *People* v. *Lawrence*, 36 Barb. 177; *People* v. *Briggs*, 50 N. Y. 553; *In the Matter of Middleton*, 82 N. Y. 196; *People* v. *Kenney*, 96 N. Y. 294; *People* v. *Bull*, 46 N. Y. 57; *Baker* v. *Braman*, 6 Hill, 47, (40 Am. Dec. 387;) *Harris* v. *Supervisors*, 33 Hun, 279; *Duer* v. *Small*, 17 How. Pr. 201; *People* v. *Perley*, 80 N. Y. 624; *In the Matter of Met. Gaslight Co.*, 85 N. Y. 526; *Matter of Sackett St.*, 74 N. Y. 95; *State* v. *Estabrook*, 3 Nev. 173; *State* v. *Harris*, 8 Pac. Rep. 462; *Evans* v. *Job*, 8 Nev. 322; *State* v. *Swift*, 11 Nev. 128; *Turner* v. *Fish*, 9 Pac.

Rep. 884; *Gamble* v. *McCrady*, 75 N. C. 509; *State* v. *Kelsey*, 44 N. J. Law, 1; *Rockport* v. *Walden*, 54 N. H. 167; *Exchange Bank* v. *Hines*, 3 Ohio St. 1; *State* v. *Dombaugh*, 20 Ohio St. 167; *Fleischner* v. *Chadwick*, 5 Or. 152; *Dewhurst* v. *City of Alleghany*, 95 Pa. St. 437; *Wynkoop* v. *Cooch*, 89 Pa. St. 450; *Allegheny Co. Home's Appeal*, 77 Pa. St. 77; *Lea* v. *Bumm*, 83 Pa. St. 237; *Smith* v. *McCarthy*, 56 Pa. St. 359; *State* v. *Copeland*, 3 R. I. 33; *State* v. *Snow*, Id. 64; *State* v. *Amery*, 12 R. I. 64; *State* v. *Allen*, 2 McCord, 55; *Tillman* v. *Cocke*, 9 Bax. 429; *Quimby* v. *Hazen*, 54 Vt. 132; *Lynch* v. *Steamer Economy*, 27 Wis. 69; *State* v. *Hundhausen*, 26 Wis. 432; *Wakeley* v. *Mohr*, 15 Wis. 609; *Kennedy* v. *Mil. & St. Paul Ry. Co.*, 22 Wis. 581; *State* v. *Tuttle*, 53 Wis. 45; *Bank of Hamilton* v. *Dudley*, 2 Pet. 492; *Tiernan* v. *Rinker*, 102 U. S. 123; *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Railroad Companies* v. *Schutte*, 103 U. S. 118; *Allen* v. *Louisiana*, Id. 80; *Packet Co.* v. *Keokuk*, 95 U. S. 80; Sedg. Stat. & Const. Law, 413; Cooley, Const. Lim. *178; *Minis* v. *U. S.*, 15 Pet. 423, 445; *Boone* v. *Juliet*, 1 Scam. 258; *Wayman* v. *Southard*, 10 Wheat. 1, 30; *Voorhees* v. *Bank of U. S.*, 10 Pet. 449; Potter's Dwarris on Statutes, 118–120; 1 Kent, Comm., (12th Ed.) 462–3; *Leavenworth Co.* v. *Miller*, 7 Kan. 479, 499.

GILFILLAN, C. J.[1] In 1881 an amendment to the constitution was adopted, adding to article 4 two sections, 33 and 34.

"Sec. 33. The legislature is prohibited from enacting any special or private laws in the following cases: * * * (5) For changing any county-seat.

"Sec. 34. The legislature shall provide general laws for the transaction of any business that may be prohibited by section 1 of this amendment, (§ 33, art. 4,) and all such laws shall be uniform in their operation throughout the state."

Section 1 of article 11 of the constitution provides: "All laws changing county lines in counties already organized, or for removing county-seats, shall, before taking effect, be submitted to the electors of the county or counties to be affected thereby at the next general election after the passage thereof, and be adopted by a majority of

[1] Berry, J., because of illness, took no part in this case.

such electors." Laws 1885, c. 272, provided a mode for changing county-seats by the county commissioners submitting to the electors of the county the proposition to change the county-seat. Section 6 of that chapter provided: "If a majority of all the voters present and voting at such election shall vote in favor of such change of county-seat, it shall be the duty of the chairman of the board of county commissioners to certify to the same, with the attestation of the county auditor, to the governor of the state, who thereupon shall issue his proclamation to that effect, and cause the same to be published and printed in some newspaper printed and published at the capital of the state, and from the date of such proclamation the place so designated shall be the county-seat of such county; but, if there shall not be a majority of such votes in favor of such change, then it shall not be lawful for the county commissioners to again submit the question of the change or removal of the county-seat at any time within five years from the time such election is held: *provided,* that in all counties when the question of the change or location of the county-seat therein has heretofore been submitted to a vote of the electors of such county, and the county-seat therein has been fixed or located by such vote, no such county-seat so fixed or located shall be changed or removed under the provisions of this act, unless three-fifths (3-5) of all the voters present and voting at such election shall vote in favor of such change or removal."

Several objections on constitutional grounds are made to this law. Section 1 of article 11 provided a mode for removing county-seats. This was to be done in each case by a special law providing for the removal, and which law, before taking effect, was to be submitted at the next general election to the electors of the county to be affected by it, and to be adopted by a majority of such electors. The law might be adopted or rejected by them. In the former event it took effect; in the latter, it became nugatory. The amendment of 1881 abrogated this mode of removal by prohibiting the passage of any special law, and of course did away with the necessity of submitting the matter to the electors. It is impracticable to so submit a general law. The proposition that a general law, to be operative, must be submitted to and adopted by the electors in each county in the state

would be absurd, and equally absurd that a general law might be so submitted and be operative in the counties where adopted, and inoperative where rejected. By the amendment the whole matter of the mode of removal is left to the judgment of the legislature, with these restrictions: that the mode adopted shall be by general law, and that such law shall be uniform in its operation throughout the state. It is competent for the legislature to provide that, whenever a change in any county is asked for, the county commissioners shall submit the proposition to the electors of the county, and prescribe whether it must, to effect a removal, be adopted either by a bare majority, or by more than a majority,—for instance, by three-fifths or three-fourths, or any other proportion of the electors. But the provision must operate uniformly throughout the state.

It must be conceded that where a general law, uniform in its operation, is required, the law is none the less general and uniform because it divides the subjects of its operation into classes, and applies different rules to the different classes. For the purpose of efficient and beneficial legislation it is often necessary to do so. The question of the extent to which it may be done without running into special legislation is a difficult one. It is difficult, and perhaps not quite safe, to state any inflexible rule. With respect to political subdivisions of the state,—counties, cities, or towns,—the supreme court of Pennsylvania lays it down that the only proper classification is by population. We are satisfied that rule is altogether too narrow. For instance, laws for incorporating villages or granting corporate powers or privileges, except to cities, must be general and uniform in their operation throughout the state. But villages lying on rivers might require, from that situation, powers and privileges not necessary to villages inland. Now, a general law for the incorporation of villages that conferred such powers and privileges on such villages, but not on inland villages, if it operated alike upon all villages in that situation, could hardly, for that reason, be called special legislation. The difference in the situation of such villages might furnish a basis for classifying them for the purpose of conferring the powers and privileges rendered necessary or proper by their situation.

The authorities are agreed that a law general in its form, but spe-

cial in its operation, violates a constitutional inhibition of special legislation as much as though special in form; and they are also agreed that, for the purpose of applying different rules to different subjects, the legislature cannot adopt a mere arbitrary classification. To permit that would open the door to a complete evasion of the constitution. Thus, in *Com.* v. *Patton,* 88 Pa. St. 258, the law was general in form, but in fact it could apply to only one county in the state, and never, whatever changes might come, could apply to any other. It was held to be special legislation. In *Devine* v. *Commissioners Cook Co.,* 84 Ill. 590, the law by its terms applied to all counties in the state having more than a specified population. As there was but one county in the state having that population, the court held it to be "a mere device to evade the constitutional provision prohibiting special legislation." In *State* v. *Mitchell,* 31 Ohio St. 592, 607, the law was general in form and applied to cities of the second class having a population of over 31,000 at the last federal census. There was but one city in the state that answered the description, and the court said: "The effect of the act would have been precisely the same if the city had been designated by name instead of by the circumlocution employed." These cases, cited from many on the subject, are sufficient to show that, in determining whether a law be general or special, courts will look, not to its form and phraseology merely, but to its substance and necessary operation.

A law is general and uniform in its operation which operates equally upon all the subjects within the class of subjects for which the rule is adopted; but, as we have said, the legislature cannot adopt a mere arbitrary classification, even though the law be made to operate equally upon each subject of each of the classes adopted. An illustration and example of that we take from *State* v. *Hammer,* 42 N. J. Law, 435, 440: "Thus a law enacting that in every city in the state in which there are ten churches there should be three commissioners of the water department, with certain prescribed duties," would present a specimen of such a law. So in the matter we have supposed, of granting powers and privileges to incorporated villages, if those situated on rivers were placed in a class for the purpose of conferring on them special powers and privileges not referring to nor suggested

by the peculiarity of their situation,—as, for instance, for the pur-pose of maintaining high schools,—the classification would be merely arbitrary. The principle adopted by the supreme court of New Jer-sey comes more nearly to what we regard the true principle of classi-fication than that stated by any other court. We quote again from *State* v. *Hammer:* "But the true principle requires something more than mere designation by such characteristics as will serve to classify; for the characteristics which thus serve as the basis for classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substan-tial distinction, having a reference to the subject-matter of the pro-posed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinc-tion on which the classification is founded must be such, in the nat-ure of things, as will, in some reasonable degree at least, account for or justify the restriction of the legislation." Or, to state it differ-ently, though not so well, the true practical limitation of the legis-lative power to classify is that the classification shall be upon some apparent natural reason,—some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them.

Recurring to the law in question, we find it divides the counties into two classes,—the classification based upon an event in the past, so that no county in one class can ever pass into the other class; and to those in one class is applied what we may call the majority rule, and to those in the other the three-fifths rule. Had the act specified by name those counties in which one rule should apply, and those in which the other should apply, it would hardly be questioned that the legislation was special, and not general and uniform in its operation throughout the state. But the counties were, at the date of the act, identified, and their *status* fixed for all time, by reference to the specified event, as fully as though the counties were named. There is nothing in the event which is the basis of classification which sug-gests any necessity or propriety for a different rule to be applied to the counties thus placed in the two classes. Why one county which

had located its county-seat by a vote of its electors twenty-five years or six months before the act passed should require a vote of three-fifths of its electors to remove it, and a county which should so locate it three or six months after the act passed may again remove or locate it upon a mere majority vote, is impossible to conceive, except that the legislature has arbitrarily so provided. But in such matters the legislature cannot arbitrarily so provide. The act is unconstitutional and void.

It is contended, however, that we may reject, as creating the unconstitutional feature of the act, what is put in it under the form of a proviso, and, with that rejected, the remainder of the act is valid. A majority of the counties in this state come within the terms of the proviso. Which is in substance the body or purview of the act, and which in substance the proviso? The entire act provides two rules. Which can we reject, and which leave to stand? How can we say which the legislature would have adopted, or that it would have adopted either, had it known that both cannot stand together? The act is not unconstitutional because of the proviso, for that alone is not unconstitutional. It is unconstitutional because it provides two rules not based on any proper classification. To cut out either, and leave the other to stand, would be legislation and not judicial construction.

Order reversed.