### BOARD OF COM'RS OF OKLAHOMA COUNTY v. BEATY.

No. 9370—Opinion Filed Feb. 12, 1918.

(171 Pac. 34.)

(Syllabus.)

**Clerks of Courts—Evidence—Statutes—Salary—Classification—Judicial Notice.**

Act approved March 7, 1911 (Laws 1910-11, c. 60), amended chapter 69, § 30, Laws 1910, and fixed the salary of the clerk of the district court in counties having a population in excess of 50,000 at $3,000 per annum. Act approved May 1, 1913 (chapter 161, Laws 1913), provided that the office of clerk of the district court and certain others were thereby consolidated into the office of court clerk, and section 9 of that act fixed his compensation as provided by act approved March 7, 1911, for the clerk of the district court. But construing act approved May 1, 1913, and May 19, 1913 (Laws 1913, c. 212), in pari materia with section 1 of the latter operating as a proviso on section 5 of the former, we held (Ratcliff v. Fleener et al., 43 Okla. 652, 143 Pac. 1051), that said consolidation did not apply to counties having a population in excess of 80,000, thereby excluding O. county. But act approved February 1, 1915 (Laws 1915, c. 6), in effect repealed the proviso and extended the consolidation of Act May 1, 1913, to counties hav-

ing a population of more than 60,000, thereby excluding O. county, and by section 4 amended section 9 of act approved May 1, 1913, so as to read that the salary of the clerk in counties having a population of 60,000 or less should be that provided for clerk of the district court by act approved March 7, 1911, and that in counties of more than 60,000, he should receive a salary of $2,100. Held, that when the Legislature, by section 4, amended section 9 as stated, the effect was to adopt by implication and incorporate therein the act approved March 7, 1911, so as to, among other things, provide that the salary of the court clerk in counties having a population in excess of 50,000 and not to exceed 60,000 shall be $3,000, and in counties having a population of more than 60,000, his salary shall be $2,100. And as thus incorporated act examined, and held, that while six of the classifications made by the act may be just and reasonable, when the act makes the further classification that in counties having a population of more than 60,000, which we judicially know includes O. county only, the clerk shall receive an annual salary of $2,100 only, thereby placing his salary below that of a clerk in a county containing a population of 34,000, who, under the act, receives a salary of $2,110, the classification is arbitrary and unjust, and, being a general law which fails to operate uniformly throughout the state, violates Const. art. 5, § 59, and cannot be sustained in so far as it attempts to fix the salary of the court clerk in counties having a population of more than 60,000. Held, further, that act approved March 7, 1911, fixes plaintiff's salary as court clerk of O. county at $3,000 per annum, and is the governing statute here.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by James Beaty against the Board of County Commissioners of Oklahoma County. Demurrer to petition overruled, and judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 53 Okla. 393, 156 Pac. 1181.

Chas. B. Selby, Co. Atty. of Oklahoma county, S. P. Freeling, Atty. Gen., and R. E. Wood, Asst. Atty. Gen., for plaintiff in error.

D. S. Levy and McAdams & Haskell, for defendant in error.

TURNER, J. On May 2, 1917, James Beaty, the duly elected, qualified, and acting court clerk of Oklahoma county, defendant in error, having theretofore been paid his salary as such by the board of county commissioners for the next preceding January and February at the rate of $250 per month, in the district court of that county, after the same had been disallowed, sued the board, plaintiff in error, on account for $250, alleging the same to be his salary as court clerk earned for March of that year. After a demurrer to his petition was overruled, and defendant had thereupon refused to plead further, there was judgment for plaintiff, and defendant brings the case here.

Whether the court was right in overruling the demurrer turns upon the question of whether section 4 of chapter 6 of an act approved February 1, 1915, amending section 9 of chapter 161, Sess. Laws 1913, so as to fix the salary of the court clerk at $2,100 in counties having a population of more than 60,000 is unconstitutional, and whether the governing act is an act entitled an "Act amending section 30 of an act entitled 'An act relating to certain county and district officers,' chapter 69 of Sess. Laws 1910, repealing all laws in conflict," approved March 7, 1911 (Sess. Laws 1910-11, c. 60, p. 139), and fixing the salary of the district clerk in counties having a population in excess of 50,000 at $3,000 per annum. Of this we will now inquire.

After the latter act had amended section 30 of the act referred to, so as to read:

"The clerk of the district court, the clerk of the superior court, the county clerk, the county treasurer, and the register of deeds, shall receive as their full compensation the following salaries: In counties having a population of not to exceed 7,000; the district clerk and register of deeds, per annum $1,000. The county clerk and clerk of the county court, per annum, $1,000. The treasurer, per annum, $900.

"In counties having a population in excess of 7,000 and not to exceed 10,000 the sum of $1,300 per annum. In addition to the foregoing he shall receive the sum of $50 for each additional 1,000 inhabitants up to 20,000 inhabitants. In addition to the foregoing, in counties in excess of 20,000 and not exceeding 30,000 the sum of $25 for each additional 1,000. In addition to the foregoing, in counties having a population in excess of 30,000 and not to exceed 40,000, the sum of $15 for each additional 1,000. In addition to the foregoing, in counties having a population in excess of 40,000 and not to exceed 50,000 the sum of $10 for each additional 1,000; and in counties having a population in excess of 50,000 the sum of $3,000"

—along came an act approved May 1, 1913 (chapter 161, Sess. Laws 1913, p. 330), which provided that the office of clerk of the district court, and clerk of the superior court were thereby consolidated into the office of court clerk, who should perform the duties of all of the offices thus consolidated. Section 9 of that act fixed his compensation thus:

"The court clerk and county clerk, provided for in this act, shall each receive the

same salary, as full compensation for their services, as is provided by law for the district clerk and county court"

—which, by the former act, was fixed at $3,000 per annum in counties having a population of more than 50,000. But, construing said act, which we shall call the consolidation act, in pari materia with an act approved. May 19, 1913 (Laws 1913, c. 212), we held that section 1 of that act should operate as a proviso on section 5 of the consolidated act, so as to provide that the consolidation should not apply to counties such as Oklahoma county having a population of over 80,000. Ratliff v. Fleener et al., 43 Okla. 652, 143 Pac. 1051. Then, along came an act approved February 1, 1915 (chapter 6, Sess. L. 1915, p. 5), which we will call the second consolidation act, and which, by enacting in haec verba section 1 of the consolidation act without said proviso, repealed it and extended the consolidation of the first act to counties having a population of more than 60,000 (thus including Oklahoma county)', and by section 4 of that act amended section 9 of chapter 161 (Sess. Laws 1913), or the first consolidation act, so as to read:

"The court clerk and the county clerk provided for in this act in each county having a population of 60,000 or less, as now or hereafter shown by the last federal census, shall each receive the same salary as full compensation for their services, as provided by law for the clerk of the district court and county clerk. In counties having a population of more than 60,000 as now or hereafter shown by the last federal census, the court clerk and county clerk, shall each receive a salary of twenty-one hundred dollars ($2,100) per annum."

And by section 5 amended section 11 of said act so as to abolish the office of clerk of the district court, clerk of the county court, clerk of the superior court, and register of deeds in every county of the state. It is the contention of plaintiff that when said section 4 of the act approved February 1, 1915, provides, as we see, that "the court clerk and the county clerk provided for in this act, in each county having a population of 60,000 or less, * * * shall each receive the same salary * * * as [is] provided by law for the district clerk and county clerk," it means that in counties of 60,000 or less the same salaries shall be paid the court clerk as are provided for district and county clerks in counties having a population of 60,000 or less by the act of March 7, 1911 (Sess. Laws 1911, c. 60, p. 139), and that when said section further provides, "In counties having a population of more that 60,000, * * * the court clerk and county clerk, shall each receive a salary

of $2,100 per annum," that said section is unconstitutional, in that, construing both acts in pari materia, the classification of counties on its face is so unfair, arbitrary, and irrational that the same can neither be sustained as a general law under article 5, § 59, of the Constitution, for the reason its operation is not uniform throughout the state, nor as a special law, for the reason that no notice of its intended introduction was filed in the office of the secretary of state pursuant to article 5, § 32, of the Constitution, which is admitted on demurrer.

When the Legislature, by section 4 of the act approved February 1, 1915, amended section 9 of the act aforesaid so as to read as stated, the force and effect thereof was to adopt by implication and incorporate therein the act of March 7, 1911, and together they should read:

"The court clerk and the county clerk provided for in this act in each county having a population of 60,000 or less, as now or hereafter shown by the last federal census, shall each receive the same salary as full compensation for their services, as provided by law for the clerk of the district court and county clerk."

That is to say:

"In counties having a population, as now or hereafter shown by the last federal census, not to exceed 7,000, per annum $1,000. In counties having a population, as now or hereafter shown by the last federal census, in excess of 7,000 and not to exceed 10,000, the sum of $1,300 per annum. In addition to the foregoing, he shall receive the sum of $50 for each additional 1,000 inhabitants up to 20,000 inhabitants. In addition to the foregoing, in counties in excess of 20,000 and not exceeding 30,000, the sum of $25 for each additional 1,000. In addition to the foregoing, in counties having a population in excess of 30,000 and not to exceed 40,000, the sum of $15 for each additional 1,000. In addition to the foregoing, in counties having a population in excess of 40,000 and not to exceed 50,000, the sum of $10 for each additional 1,000; and in counties having a population in excess of 50,-000 (and not to exceed 60,000) the sum of $3,000; in counties having a population of more than 60,000 as now or hereafter shown by the last federal census, the court clerk and county clerk shall each receive a salary of twenty-one hundred dollars ($2,100) per annum."

And when the Legislature by this act divided the counties of the state into five classes, and provided in the first that the salary of the clerk in counties of less than 7,000 population should be $1,000 per annum, and in the second, that it should be $1,300

in counties with a population of from 7,000 to 10,000, inclusive, plus $50 for each 1,000 additional population up to 20,000, it meant that in counties of 20,000 the clerk shall receive $1,800. And when the act makes a third classification and says that in addition to $1,800, in counties having more than 20,000 he shall receive $25 for each additional 1,000 population up to 30,000, it means that the clerk in a county of 30,000 shall receive $2,050. And when the act makes a fourth classification and says, in addition to $2,050, in counties having a population of more than 30,000 and not over 40,000, he shall receive $15 for each additional 1,000, it means that in counties of 40,000 he shall receive $2,200. And when the act makes a fifth classification and says that in addition to $2,200, in counties having a population of more than 40,000 and not over 50,000, he shall receive $10 for each additional 1,000, it means in counties of 50,000 he shall receive $2,300. And when the act makes a sixth classification, and says that in counties having a population in excess of that and not to exceed 60,000, he shall receive $3,000, it is, so far, a just and reasonable classification based upon the proposition that the more populous the county, the more work the clerk will have to do, and hence the more compensation he shall receive. But when the act makes the further classification that in counties having a population of more than 60,000, which we take judicial notice includes Oklahoma county only, the clerk shall receive an annual salary of $2,100 only, thereby placing his salary below that of a clerk in a county of 34,000 who, under the act, receives a salary of $2,110, the classification thereby becomes arbitrary and unjust, and cannot stand in so far as providing for the salary of plaintiff is concerned for the reason, being a general law, it fails to operate uniformly throughout the state. In Burks v. Walker, 25 Okla. 353, 109 Pac. 544, we said:

"To determine whether or not a statute is general or special, courts will look to the statute to ascertain whether it will operate uniformly upon all the persons and parts of the state that are brought within the relation and circumstances provided by it. People ex rel. v. Hoffman, 116 Ill. 587 [5 N. E. 596, 8 N. E. 788, 56 Am. Rep. 793]; Nichols v. Walter et al., 37 Minn. 264 [33 N. W. 800]. And the operation is uniform if it affects alike all persons in like situation. But where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some particularity in the subject-matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnish a practical and real basis for discrimination."

And, quoting approvingly from Nichols v. Walter et al., 37 Minn. 264, 33 N. W. 800, we said:

"It is not essential that it operate upon all the inhabitants of the state; nor is it an objection that it distinguishes a class. In the very nature of things, the law must.in dealing with persons and property and governmental divisions, group persons or objects having similar attributes into classes, and the general assembly must legislate appropriately for each, and, unless it is made manifest that such legislation is directly forbidden by the Constitution, or the* attempted classification is purely arbitrary, unreasonable, unjust or capricious, the power of the General Assembly to thus classify cannot be successfully challenged." State v. Hogan, 63 Ohio St. 208, 58 N. E. 572, 52 L. R. A. 863, 81 Am. St. Rep. 626.

While we take judicial notice of everything calculated to affect the validity of this statute, nothing we know or which has been suggested tends to justify this classification. For here is an act which, although upon its face it purports to be founded on a classification based upon the proposition, obviously correct, that the more populous the county, the more work the clerk will have to do, and the more compensation he should receive, provides in the last classification, in effect, that Oklahoma county, the most populous county in the state, shall be placed in a class by itself, that the basic principle of the act shall not, as to it, apply, but the contrary, and that the more work the court clerk in that county performs the less pay he shall receive, but not less than $10 per annum less than the court clerk in a county containing 34,000 population. This means that the clerk in Oklahoma county, having a population of 85,232 at the last federal census, shall be required to perform about 2½ times as much work for pay equal to that of a court clerk in a county having a population of 34,000. Inasmuch as this is a statute that excepts from the operation of the general law Oklahoma county, without any good reason, and in fact without any reason at all so far as we can see, it is local and special in its nature and invalid under the constitutional provision invoked. 1 Dill. on Municipal Corp. (5th Ed.) § 170, says:

"Under a prohibition of special legislation which embraces counties within its operation, a classification of counties is permissible, and a statute which applies to all counties of a legitimate class is a general and not a local

law. Therefore counties may be divided into classes according to population for the purpose of assessing property for taxation; or for the purpose of regulating the compensation of county officers, and in other matters relating to the organization and government of counties where population furnishes a reasonable basis for discrimination. But a statute which excepts from the operation of the general laws one or more counties a rule of law which is not applicable to the others, when no good reason exists why all should not be subject to the same rule, is local and special, and is invalid under the constitutional prohibition."

State ex rel. Douglas v. Ritt, 76 Minn. 531, 79 N. W. 535, was quo warranto to try the right to the office of assessor of Ramsey county. The relator S. claimed it in virtue of certain laws set forth in his information. Respondent R. claimed it by appointment in virtue of a certain act assailed. Whether the one or the other should prevail turned upon the constitutionality of the latter act. It provided (Laws 1899, c. 140):

"Section 1. There shall be elected in each county in this state, having a population of not less than 100,000 and not over 185,000 inhabitants, a county assessor, who shall hold his office for two years from and after the first Monday in January next succeeding his election," etc.

"Sec. 6. That the board of county commissioners of such counties, shall at their first meeting after the passage of this act nominate and appoint a county assessor, who shall fill such office * * * until the next general election to be held in the month of November, 1900, and until his successor is elected and qualified."

Of it the headnotes said:

"The primary and essential provision of the act, and that which differentiates counties falling within its operation, is that it provides for one county assessor for the whole county, instead of an assessor for each municipal division of the county, as provided by the then existing general laws."

And, held:

"That the entire act is invalid, as being special legislation regulating the affairs of counties in violation of section 33, art. 4, of the Constitution; the attempted classification by population, as applied to the subject of the act, being incomplete, arbitrary, and evasive of the provisions of the Constitution."

In the body of the opinion it was said:

"It is also urged that the Legislature must be allowed a large discretion in the matter of classification by population. This is true, but all that this means is that a classification of municipalities by population in statutes relating to their structure, machinery, and powers is legitimate where population bears a

reasonable relation to the subject of the legislation; and, classification in such cases being committed to the judgment of the Legislature, its judgment should prevail, unless the classification be manifestly arbitrary, illusory, or applied for the purpose of evading the provisions of the Constitution. These are the exact facts in this case. That it was intended to apply only to Ramsey county would not be clearer if the act had in express terms so stated."

It is unnecessary to cite further authority on a point so clear. But see Weaver v. Davidson County, 104 Tenn. 315, 59 S. W. 1105; Morrison v. Bachert, 112 Pa. 322, 5 Atl. 739; L'Hote v. Hilford, 212 Ill. 418, 72 N. E. 399, 103 Am. St. Rep. 234; Commonwealth ex rel. Brown v. Gumbert, 256 Pa. 531, 100 Atl. 990; Freeholders, etc., v. Stevenson, 46 N. J. Law, 173.

We are therefore of the opinion that that part of the act approved February 1, 1915 (Laws 1915, c. 6, § 4) which reads, "In counties having a population of more than 60,000, as now or hereafter shown by the last federal census, the court clerk and county clerk shall each receive a salary of $2,100 per annum," in so far as it attempts to provide for the salary of plaintiff, is unconstitutional for the reason stated; that being unconstitutional, it leaves unaffected that part of the act approved March 7. 1911 (Sess. Laws 1911, c. 60, p. 139), operated upon by the second consolidation act as stated, fixing the salary of the court clerk in counties having a population in excess of 50,000 at $3,000 per annum, and that such is the governing statute here under which plaintiff is entitled to recover.

The judgment is therefore affirmed.

All the Justices concur, except RAINEY, J., who concurs in conclusion. THACKER, J., not participating.