# HATFIELD v. GARNETT.

No. 7065.   Opinion Filed January 26, 1915.

(146 Pac. 24.)

1.   STATUTES—Local and Special Laws—Uniformity—Classification of Counties. The Legislature may classify the counties of the state on the basis of population for legislative purposes, when the classification is not arbitrary and capricious, but is founded upon real and substantial distinctions, and operates uniformly upon all counties within the different classes provided by the act.

2.   STATUTES—Enactment—Local and Special Legislation—Classification of Counties. A classification of the counties of the state based upon existing or past conditions (for example, the federal census of 1910, which makes no provision for future changes in the population of the various counties of the state, is local and special legislation, and to be valid section 32, art. 5, of the Constitution, must be complied with.

3.   STATUTES—Enactment—Local and Special Law—Preliminary Notice—Superior Courts. Chapter 77, Sess. Laws 1913, p. 119, being an act amending article 7, c. 14, Sess. Laws 1909, creating superior courts in various counties of the state, classifies the counties of the state on the basis of the federal census of 1910, and is not prospective in its operation, and is local and special legislation; and no notice of its introduction having been published for four consecutive weeks in some weekly newspaper, published or having a general circulation in the counties affected thereby, and no verified proof of such publication having been filed with the Secretary of State, as required by section 32, art. 5, of the Constitution, same is invalid.

(Syllabus by the Court.)

Original proceeding for a writ of prohibition by Ina B. Hatfield against Charles F. Garnett.   Petition denied.

*Bennett & Pope,* for petitioner.

*Jennings & Levy* and *McAdams & Haskell,* for respondents.

HARDY, J.   This is an original proceeding brought in this court by Ina B. Hatfield, the petitioner, against Charles H. Gar-

nett, respondent, in which she seeks a writ of prohibition restrain-
ing the respondent, as judge of the superior court of Oklahoma
county, from further exercising jurisdiction in the trial of a cer-
tain case pending in said court, in which the petitioner is plain-
tiff and J. E. Thompson is defendant. The right of respondent
to exercise jurisdiction in said case is challenged because it is
contended that the superior court was abolished by act of the
Legislature of March 22, 1913, being chapter 77, Sess. Laws
1913, p. 119.

Respondent makes return and files answer herein, admitting
the allegations of the petition, but asserting his right to proceed
as judge of said superior court because of the unconstitutionality
of said act of the Legislature, for two reasons: First, that said
act is not valid as a general law; and, second, that said act is
local and special legislation and is invalid because it is in viola-
tion of certain provisions of the Constitution.

The original act establishing superior courts (article 7, c. 14,
Sess. Laws 1909) was sustained as a valid exercise of legislative
authority by this court in the case of *Burks v. Walker,* 25 Okla.
353, 109 Pac. 544. It was there held that said act was general
in its nature and uniform in its operation, and did not violate
section 59, art. 5, of the Constitution, which requires that laws
of a general nature should have a uniform operation throughout
the state, and that, where a general law could be made applicable,
no special law should be enacted.

The right of the Legislature to pass a local or special law
establishing a superior court was upheld in *Chickasha Cotton Oil
Co. v. Lamb & Tyner,* 28 Okla. 275, 114 Pac. 333. In the latter
case the Legislature observed all the requirements of the Consti-
tution contained in section 32, art. 5, for the enactment of a
special and local law, and in doing so gave notice of the intended
introduction of said bill, as required by said section. Section 32,
art. 5, of the Constitution, provides as follows:

"No special or local law shall be considered by the Legislature until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper published or of general circulation in the city or county affected by such law, stating in substance, the contents thereof, and verified proof of said publication filed with the Secretary of State."

There is filed with the record in this case an affidavit by the Secretary of State, in which he states that he has made a search and examination of the records of his office, and finds that no notice was published of the intended introduction in the regular session of the Fourth Legislature, of what is commonly known as "House Bill No. 370," being chapter 77, Sess. Laws 1913; and that no verified proof of publication of any such notice was filed in his office as is provided by section 32, art. 5, of the Constitution. In connection with this affidavit there is filed a stipulation of counsel, in which it is agreed that the statements made in the affidavit of the Secretary of State are true and correct, and that his affidavit may be treated and considered as his evidence the same as if said affidavit were given in open court. From this affidavit and stipulation it appears that no notice of the introduction of said bill was published for four consecutive weeks in some weekly newspaper published or of general circulation in any city or county affected by said law, stating, in substance, the contents thereof, nor was verified proof of said publication filed with the Secretary of State, as required by section 32, art. 5, of the Constitution. It is plain, then, that said law cannot be sustained as local or special legislation, because of the failure to comply with either or both of said constitutional requirements.

Having determined that the law cannot be sustained as local or special legislation, its validity must then be determined by applying to it the rules applicable to general legislation.

Section 59 of article 5 of the Constitution reads as follows:

"Laws of a general nature shall have a uniform operation

throughout the state, and where a general law can be made applicable, no special law shall be enacted."

The question as to whether a general law shall be passed by the Legislature, and whether the same may be made applicable so as to inhibit the passage of a local or special law, is a question for the Legislature, and the decision of the Legislature upon such a question is conclusive upon the court. *Chickasha Cotton Oil Co. v. Lamb & Tyner,* 28 Okla. 275, 114 Pac. 333; Sutherland, Stat. Const. sec. 190, and authorities cited there. The Legislature having decided this question, it is not an open inquiry for the courts as to the character of the legislation that should be passed, but simply whether the legislation enacted complies with the constitutional requirements.

The original act establishing superior courts is chapter 14, art. 7, Sess. Laws 1909, which was upheld in *Burks v. Walker, supra.* That act provided for establishing a superior court in each county of the state having a population of 30,000 and a city therein of 8,000, and was held by the court to be general in its nature and uniform in its operation, and not in violation of section 59, art. 5, of the Constitution.

The act in question (section 1, c. 77, Sess. Laws 1913) purports to be an amendment of the original act, and provides that a superior court is created in every county in the state having a population of 33,000 or more, and having a city therein with a population of 12,000 or more, as shown by the federal census of 1910, and further provides that in all counties having a population of more than 33,000, and having a city with a population of more than 12,000 and less than 15,000, the superior court shall continue only until the first Monday in January, 1915, and providing that, in all counties having a population of more than 75,000, said superior court shall continue only until the first Monday in January, 1915, at which time said superior court in such counties shall expire, except that, in counties where said su-

perior court is held in a city other than the county seat, the same shall not expire on said date, but shall continue until otherwise provided by law; the purpose of the act being stated therein, which is as follows:

"It being the purpose and intent of this act to abolish, immediately, upon this act becoming effective, all superior courts established by law in counties having a population of less than thirty-three thousand, and having a city therein with a population of less than twelve thousand, as shown by the federal census of 1910, and to abolish on the first Monday in January, 1915, all superior courts in counties having a population of more than thirty-three thousand and having a city therein with a population of less than fifteen thousand and more than twelve thousand and in all counties having a population of more than seventy-five thousand, as shown by the federal census of 1910, and where said superior court is held at the county seat of said county, and to continue, until otherwise provided by law, * * * all superior courts in all counties having a population of more than thirty-three thousand and having a city therein with a population of less than fifteen thousand and more than twelve thousand, where said court is held at a city in said county other than the county seat: Provided, this act shall not affect courts established by chapter 47, Session Laws of 1910, approved March 12, 1910."

The language of the act shows that the Legislature has taken the federal census of 1910 as a basis for classification, and has undertaken to classify the counties of the state, with reference to population, as it existed at that time. The court will take judicial knowledge of he facts shown by the census; and by this classification there are five counties in the state that would be entitled to a superior court under the provisions of this act, if the first paragraph of section 1 were not affected by the second paragraph thereof. By the second paragraph of said section 1, it is provided that in counties having a population of more than 33,000, and having a city therein with a population of more than 12,000 and less than 15,000, as shown by the federal census of 1910, said superior courts should continue only until the first Monday in January, 1915, except in counties where said superior court is

held in a city of said county other than the county seat, in which event said superior court shall continue until otherwise provided by law. The first part of this provision would affect Pittsburg and Garfield counties, and the superior court in said counties would expire on the first Monday in January, 1915. By the second part of this paragraph the county of Pottawatomie would be the only county in the state to come within its provisions, and the superior court in said county would continue until otherwise provided by law. It is also provided in the same connection that in counties having a population of more than 75,000, as shown by the federal census of 1910, said superior court should continue only until the first Monday in January, 1915; and by this provision it is clearly apparent that only Oklahoma county was intended to be affected, and that no other county within the state would ever come within its provisions. It is also further provided that in all counties having a population of more than 33,000, and having therein a city with a population of more than 15,000, except in counties having a population of more than 75,000, as shown by the federal census of 1910, said superior court shall continue until otherwise provided by law, which provision can have no application to any other counties than Muskogee and Tulsa. As a proviso to said section it is provided that "this act shall not affect courts established by chapter 47, Session Laws of 1910, approved March 12, 1910," which act establishes a superior court at Clinton, in Custer county, and the validity of which was sustained in *Chickasha Cotton Oil Co. v. Lamb & Tyner, supra.*

The census of 1910, being taken as the sole basis of classification, must determine for all future time the status of all counties in this state with reference to the establishment of a superior court therein under the terms of this act; and the Legislature might as well have referred to the counties affected by name as to have undertaken a classification which could affect only the counties mentioned. If the Legislature has authority to take such a basis for classification and to predicate a general law thereon, then

the act in question must be upheld as a valid exercise of legislative authority. No matter what changes might occur in the population of the state in the future, and how great might be the increase in some counties or the decrease in others, there can never be any change under the terms of that act with reference to the existence of superior courts in the state, unless the Legislature shall make further provision therefor by additional legislation. No provision is made for a probable increase in population which may be shown by the census to be taken by the state authorities during the present year (1915), or by any future census, either state or federal; and while the superior court, under the terms of this act, would be abolished in Oklahoma county because it has more than 75,000 population, if the population of Muskogee or Tulsa county should reach 75,000 or more, the superior court in that county would not be abolished, but would continue to exist, notwithstanding the population might be the same or greater than that of Oklahoma county.

The question then presents itself as to whether or not this classification presents a substantial distinction between the several counties affected with reference to the subject-matter of the legislation in question, and whether the distinctions arise from substantial differences which are so marked as to call for special legislation and to justify the application of different provisions thereto. The authority of the Legislature to classify the counties or other subdivisions of the state by population, when not arbitrarily done, has been upheld in a great many cases. *Hanlon v. Board of Co. Com'rs,* 53 Ind. 123; *State v. Reitz,* 62 Ind. 159; *Ladd v. Holmes,* 40 Or. 167, 66 Pac. 714, 91 Am. St. Rep. 457; *Peterson v. State,* 104 Tenn. 127, 56 S. W. 834; *Cook v. State,* 90 Tenn. 407, 16 S. W. 471, 13 L. R. A. 183; *State v. Donovan,* 20 Nev. 75, 15 Pac. 783; *Chicago Term. Tr. Ry. Co. v. Greer,* 223 Ill. 104, 79 N. E. 46, 114 Am. St. Rep. 313; 1 Sutherland, Stat. Const. sec. 210, and cases cited thereunder.

An examination of these cases and the authorities thereunder

cited shows that, in every case where the law has been upheld, the opinion of the court has been placed upon the ground that the law is uniform in its operation, that the classification is not arbitrary, and that provision is made for future contingencies, so that changes in the population of the state or subdivisions affected by the acts in question would not bring about inequalities So far as we are able to discover, where the classification is arbitrarily based upon a certain census, and the act is not prospective in its operation, the laws have been uniformly held to be local in their character and of a special nature; and, where constitutional provisions similar to ours are in force, the acts have been held to be void because in conflict therewith.

In upholding the constitutionality of the original act (Sess. Laws 1909, p. 181, the Supreme Court of this state, in the case of *Burk v. Walker, supra,* used the following language:

"Does the superior.court act come within the rule of the foregoing cases? We think it does. By its terms, it is not restricted in its operation to those counties of the state which now have a population and contain a city of the population prescribed by section 1, but any county shown by any future federal census of the state to possess the requirements provided in said section falls within the operation of the statute, and a superior court is created and established in such county. We take judicial notice of the fact that, at the time of the passage of the act, five different counties of this state possessed the requirements prescribed by the act. It is entirely probable that the federal census to be taken next year will, owing to the rapid increase in the population of this state, and the development of its cities, show other counties falling within the provisions of the act authorizing the establishment of a superior court therein. Such counties are not excluded from the operation of the act. The next inquiry is whether the classification made by the statute is one founded upon real, substantial distinctions, suggested by reason and experience, or is arbitrary and unreasonable. We think the former."

The general rule as to classification, based upon existing or

past conditions, is stated in 1 Sutherland, Stat. Const. sec. 214, as follows:

· "A classification based upon existing or past conditions or facts, and which would exclude the persons, places, things, or objects thereafter coming into the same situation or condition, is special and void. Thus, classification of cities or counties, based upon existing population or upon the population shown by a specific census, is of this character."

Other authorities to the same effect are as follows: *Topeka et al. v. Gillett et al.,* 32 Kan. 431, 4 Pac. 800; *State v. Scott,* 70 Neb. 685, 100 N. W. 812; *State v. Des Moines,* 96 Iowa, 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381; *Fleming v. Memphis,* 126 Tenn. 331, 148 S. W. 1057, 42 L. R. A. (N. S.) 493, Ann. Cas. 1913D, 1306; *Sutton v. State,* 96 Tenn. 696, 36 S. W. 697, 33 L. R. A. 589; *Campbell v. City,* 155 Ind. 186, 57 N. E. 925; *Kraus v. Lehman,* 170 Ind. 408, 83 N. E. 714, 84 N. E. 769, 15 Ann. Cas. 849; *Central Trust Co. v. Citizens' R. R. Co.* (C. C.) 80 Fed. 218; *State v. Mitchell,* 31 Ohio St. 607; *Fields v. Com'rs,* 16 Ohio St. 476; *Wiles v. Williams,* 232 Mo. 56, 133 S. W. 1, 34 L. R. A. (N. S.) 1060; *State v. Mayer et al.,* 45 N. J. Law, 298; *Coutieri v. New Brunswick,* 44 N. J. Law, 58; 1 Sutherland, Stat. Const. sec. 214.

The requisites necessary for a law to be general in its nature and uniform in its operation, so as not to be in conflict with section 32, art. 5, of the Constitution, is well stated by the court in *Burks v. Walker, supra,* as follows:

"In order for a law to be general in its nature and to have a uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class, if it operates equally upon all the subjects within the class for which it was adopted. To determine whether or not a statute is general or special, courts will look to the statute to ascertain whether it will operate uniformly upon all the persons and parts of the state that are brought within the relation and circum-

stances provided by it. *People ex rel. v. Hoffman,* 116 Ill. 587 [5 N. E. 596, 8 N. E. 788, 56 Am. Rep. 793]; *Nichols v. Walter et al.,* 37 Minn. 264 [33 N. W. 800]. And the operation is uniform if it affects alike all persons in like situation. But where a statute operates upon a class, the classification must not be capricious or arbitrary, and must be reasonable and pertain to some peculiarity in the subject-matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristics upon which a different treatment may be reasonably founded and that furnish a practical and real basis for discrimination. *Nichols v. Walter, supra."*

Applying the rule as laid down by the foregoing authorities, the act in question cannot be said to be general in its nature and uniform in its operation throughout the state, for upon its face it does not operate equally upon all counties in like situation, and has as its arbitrary basis for classification the federal census of 1910, and the act is not prospective in its operation, and must therefore be held to be local and special legislation; and, section 32 of article 5 of the Constitution not having been complied with the act must be held invalid, and the prayer of the petition denied.

All the Justices concur.