## LEATHEROCK v. LAWTER *et al.*

No. 7072.   Opinion Filed March 2, 1915.

(147 Pac. 324.)

1. STATUTES—Enactment—Local and Special Laws—Superior Court. Chapter 87, Sess. Laws 1913, is general in its nature, and does not violate section 32, art. 5, of the Constitution, which requires notice to be given of the intended introduction of local and special laws and verified proof of such publication to be filed with the Secretary of State.

2. STATUTES—Title and Subject-Matter—Statute Abolishing Superior Court. The title to a bill may be general, and need not specify every clause in the statute; it being sufficient if they are referable to and cognate to the subject expressed.

3. STATUTE—Validity—Time of Taking Effect—Statute Abolishing Superior Court. It is competent for the Legislature to fix a date in the future upon which an act shall become effective, provided that said date is not less than 90 days from the date of adjournment; and in cases where an emergency is declared to exist, they may be made effective from and after their passage and approval.

Kane, C. J., dissenting.

(Syllabus by the Court.)

Original proceeding for writ of prohibition by R. E. Leatherock against J. W. Lawter and another. Writ granted.

*Chas. A. Holden,* for petitioner.

*M. L. Holcombe* and *J. W. Lawter,* for defendants.

HARDY, J.   The petitioner, R. E. Leatherock, seeks by this proceeding to prohibit the respondent J. W. Lawter, as judge of the superior court of Custer county, from further proceeding in a certain cause therein pending, in which petitioner is defendant, and alleges, in support of this petition, that the respondent Lawter is without authority to act because said superior court of Custer county has been abolished.   To this petition respondent files answer and admits the pendency of said suit, and asserts his right to entertain jurisdiction of said cause as judge of said superior court, for the reason that the act attempting to abolish said court is unconstitutional and void.

The act creating the superior court of Custer county was approved March 12, 1910 (Sess. Laws 1910, p. 78).   The validity of said act was upheld by this court in the case of *Chickasha Cotton Oil Co. v. Lamb & Tyner,* 28 Okla. 275, 114 Pac. 333. The act abolishing this court is chapter 87, Sess. Laws 1913, p. 140.   The validity of this act is assailed:   (1)   Because it is urged that same is local and special, and is invalid for the reason that no notice of its intended introduction was published and proof thereof filed with the Secretary of State in compliance with section 32, art. 5, of the Constitution.   Under this proposition it is urged that the case of *Hatfield v. Garnett,* 146 Pac. 24, *ante,* decided January 26, 1915, is decisive of this proposition.   We do not think that case is conclusive here, and think a distinction can be drawn between the two.   The court was there considering the validity of chapter 77, Sess. Laws 1913, with reference to superior courts in general, in which the Legislature had undertaken to classify the different counties of the state by population on the basis of the federal census of 1910 for the purpose of establishing courts and in passing upon the act then under consideration the court held that because of the fact that the legislature had undertaken to pass a general law which classified

the counties of the state in an arbitrary and capricious manner, and without any real and substantial distinctions in the different classes, and because said act did not operate uniformly upon all of the different counties within the classes, and because it was not prospective in its operation and did not make provision for future changes in population of the various counties of the state, it must therefore be held to be local and special. The court did not determine in that case whether a law passed by the Legislature creating a single superior court was general or special, and did not have that question under consideration. Neither could the case of *Chickasha Cotton Oil Co. v. Lamb & Tyner, supra,* be said to be conclusive upon this proposition, because in that case the court expressly declined to determine whether the act then under consideration was general or special, and because of the fact that the Legislature observed all of the requirements of the Constitution contained in section 32, art. 5, thereof, for the enactment of a special and local law, and in doing so gave notice of the intended introduction of said bill. The court upheld it on that ground, saying:

"We prefer, however, not to decide at this time whether an act creating a court of the character here involved is local or special, for this cause has been advanced upon the docket and an early hearing given, in order to expedite a decision; and this court, with the great volume of business now pressing upon it for attention, has not been able to thoroughly examine all the authorities bearing upon such question under other Constitutions with provisions relative to the power of the Legislature to create courts similar to the provisions of the Constitution of this state, nor to consider fully the force of said provisions of our Constitution in their relation to the other provisions of the Constitution. If we assume, without deciding, that this act, in so far as it creates a court with its territorial jurisdiction confined to one county having a population not greater or unlike other counties of the state, is to that extent a local law, still this act can and should be sustained; and we, therefore, proceed in our considera-

tion of the questions raised upon the hypothesis that said act is to this extent local."

The question as to whether an act creating a superior court for one county, or an act abolishing such a court, is general or local and special, is not presented squarely to the court for determination. Section 1, art. 7, Const. (section 186, Williams' Ann. Const.) provides:

"The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district court, county courts, court of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

By this section it will be seen that the judicial power of this state is vested in the courts named in said section, and in such other courts, commissions, or boards as may be created by the Legislature, subject to this one qualification, that they must be inferior to the Supreme Court. The power of the Legislature under this section to establish superior courts has already been determined in favor of that power in *Burks v. Walker*, 25 Okla. 353, 109 Pac. 544, and *Chickasha Cotton Oil Co. v. Lamb & Tyner, supra*. In the last-named case, in discussing this provision of the Constitution, and the character of the superior courts created by the act then under consideration, the court says:

"Although the territorial jurisdiction of the superior court of Custer county is confined to the limits of a county, it is not a county court, nor a part of the county government. It does not deal with the business affairs of the county; its functions are purely judicial. It exercises one of the high powers of the state government, to wit, judicial power, and, owing to the extent of its jurisdiction, is, as a court of original jurisdiction, one of high character. It has original jurisdiction in all offenses against the state committed within its territorial jurisdiction and of all civil cases, except private matters. Its jurisdiction of subject-matter is more comprehensive than that of the district courts. The mere fact that its presiding officer is selected by a single

county and is paid by that county does not make such officer a county officer. Some of the members of the House of Representatives and of the state Senate are elected by the voters of a single county, and, in the redistricting of this state for judicial purposes, it may occur that some of the district courts of the state will be confined to districts coextensive with the boundaries of a single county; but we think it could not be contended with any show of reason that such facts would render these respective officers county officers. The character of this office is to be determined by the nature of the powers which it contains and the duties it imposes."

In the case of *Waterman et al. v. Hawkins, Chancellor,* 75 Ark. 120, 86 S. W. 844, the court said:

"Statutes establishing or abolishing separate courts relate to the administration of justice, and are either local or special in their operation. Though such an act relates to a court exercising jurisdiction over limited territory, it is general in its operation, and affects all citizens coming within the jurisdiction of the court. Whether an act of the Legislature be a local or general law must be determined by the generality with which it affects the people as a whole, rather than the extent of the territory over which it operates; and, if it affects equally all persons who come within its range, it can be neither special nor local, within the meaning of the Constitution."

In *State ex rel. Donham v. Yancy,* 123 Mo. 391, 27 S. W. 380, the Supreme Court of Missouri had under consideration a similar question, and in passing upon the proposition, said:

"Whether an act of the Legislature be a local or a general law must be determined by the generality with which it affects the people as a whole, rather than the extent of the territory over which it operates, and if it affects equally all persons who come within its range, it can neither be special nor local within the meaning of the Constitution. Moreover, the general power of the Legislature to establish criminal courts in counties having a population exceeding 50,000 is clearly recognized by section 31, art. 6, of the Constitution, as by prohibiting the establishing of criminal courts in such counties, by express terms, having a pop-

ulation of less than 50,000 people is a recognition of the power to establish them in counties having a population exceeding 50,000. When there is a specific grant of power conferred by the Constitution upon the Legislature, upon any certain or particular subject, an act  *  *  *  in pursuance of such grant will not be held unconstitutional upon the ground that it is local or special legislation.' See *State ex rel. v. County Court,* 50 Mo. loc. cit. 324, 11 Am. Rep. 415; *State ex rel. v. Watson,* 71 Mo. 470; *Ewing v. Hobilitzell,* 85 Mo. 64."

In *Chickasha Cotton Oil Co. v. Lamb & Tyner, supra,* Mr. Justice Hayes collects a number of authorities bearing upon the question here presented, and it will be seen that there are respectable authorities and good reasoning upon both sides of the question. We are satisfied that the opinion in *Hatfield v. Garnett, supra,* is in line with the former expressions of this court and in harmony with the authorities upon that proposition, but, as already stated, the question there was not the nature of an act creating a single court, but whether the act undertaking to legislate for the entire state was general or local and special; and it was there determined that, as already stated, because said act was not uniform in its operation and did not affect alike all of the counties within the different classes, same must be held to be special, for the reason that it was not uniform in its operation and because of the other objections stated in said opinion. If the act in question is general and is uniform in its operation, which is the true test of the character of the act, then the distinctions, we think, can be successfully maintained, and the act should be upheld. The court created by the act is not a county court, and its officers are not officers of the county, but are state officers, and the court exercises a high jurisdiction and affects all the citizens alike coming within the jurisdiction of the court. Whether an act of the Legislature be a local or general law must be determined by the generality with which it affects the people as a whole rather than the extent of the territory over which it operates, and if it affects equally all persons who come within its

range, it is neither local nor special. Applying the test to the act in question, which is considered by the foregoing authorities, we think that chapter 87, Sess. Laws, 1913, which repeals the act establishing a superior court in Custer county, is general in its nature and uniform in its operation, in that it affects all the citizens of the state alike so far as the exercise of its jurisdiction and power is concerned, and that by reason thereof it is not violative of section 32, art. 5, of the Constitution; and in so saying we are not unmindful of the holding in Hatfield v. Garnett and other decisions upon the question of superior courts in this state. The act upheld in *Burks v. Walker, supra,* was declared to be uniform in its operation, affecting all the counties alike in the different classes, and making provision for prospective changes in the population of the state, which was not the case in *Hatfield v. Garnett, ante,* and for which reason said act was declared to be local and special.

The next objection urged to the validity of said act is that the title fails to comply with section 57, art. 5, of the Constitution, which requires every act of the Legislature to embrace but one subject, which shall be clearly expressed in its title, with certain exceptions therein stated. The title to the act in question in our judgment, does not contravene this constitutional provision. The correct rule with reference to the title of an act is discussed *In Re County Com'rs Seventh Judicial Dist.,* 22 Okla. 435, 98 Pac. 557; and many authorities are there collected. In *State v. Hooker,* 22 Okla. 712, 98 Pac. 964, the court again had under consideration the question as to what it was necessary to embrace in the title of an act, and it was there said:

"The title may be embraced in general words; or it may be a brief statement of the subject, or it may be an index to, or an abstract of, the contents of the act."

In Lewis' Sutherland Stat. Const. (2d Ed.) vol. 1, p. 192

the purpose of this constitutional provision is stated in the follow-
ing language:

"The intent of this provision of the Constitution is to prevent
the union in one act of incongruous matter, and of objects having
no connection and relation; to require singleness of subject-
matter, and an indicative or suggestive title to prevent surprise by
having matter of one nature embraced in the bill, while its title
is silent or expresses another. But there must be a limit to the
division of matter into separate bills or acts. A reasonable con-
struction permits the single subject to be comprehensive enough
for practical purposes, for it only necessitates the separation of
entireties, and great latitude is allowed in stating the subject
in the title."

Again, on page 220, the same author says:

"It appears already from what has been said in the preceding
section and the cases which have been cited that the constitutional
provision in question permits an announcement of the subject in
general terms in the title of an act; that to facilitate legislation
which is intended to be germane to that subject, a very liberal
construction is adopted, both of constitutional requirement and
of legislation affected by it, to sustain all laws not within the
mischief intended to be remedied. * * * Where the title of
a legislative act expresses a general subject or purpose which is
single all matters which will or may facilitate the accomplish-
ment of the purpose so stated, are properly included in the act, and
are germane to its title."

In *City of Pond Creek v. Haskell,* 21 Okla. 711, 97 Pac. 338,
this court approved the following rule:

"Under this clause of the Constitution, the title of a bill
may be very general, and need not specify every clause in the
statute, it being sufficient if they are all referable and cognate
to the subject expressed; and when the subject is expressed in
general terms, everything which is necessary to make a complete
enactment in regard to it, or which results as a complement of
the thought contained in the general expression, is included in
and authorized by it. But, if clauses are contained in the act

which are not so correlated to the subject expressed in the title as to appear to follow as a natural and legitimate complement, they cannot stand."

We think these authorities are sufficient to demonstrate that the objections made to the title of the act are not sound. In abolishing the superior court of Custer county, it was a natural thing for the Legislature to provide that pending cases should be transferred to other courts and imposing certain duties upon the clerk of such court. Such provisions were naturally correlated to the subject of the act, and were a natural complement thereto, and we do not think it was necessary to completely index the act, but that the title was sufficiently broad to include these provisions.

Another objection is made to the act, that it is inoperative to abolish the superior court of Custer county for the reason that it purports to repeal only chapter 47, Sess. Laws 1910, and does not purport to repeal article 2, c. 20 (sections 1808-1815, inclusive) Rev. Laws 1910. Counsel are in error in this statement, because the title of the act is stated as follows:

An act repealing an act entitled "an act creating and establishing a county superior court in the city of Clinton, Custer ocunty, Oklahoma," etc.

It is urged that because the act makes no specific reference to the sections in the Revised Laws of 1910, where the original act is brought forward and incorporated in the Code, being sections 1808-1815, inclusive, that said act was repealed by the revision or codification of the laws as embodied in said Revised Laws of 1910. This objection is not tenable. The act as embraced in the Revised Laws is the same as the original act, with some revision in language, and the object and purpose of chapter 87, Sess. Laws 1913, was to repeal the act establishing a superior court in Custer county. The act adopting the Code expressly provides that the adoption of the Code shall not be construed to repeal any act of the

Legislature enacted subsequent to the adjournment of the extraordinary session of the Legislature which convened in January, 1910. Chapter 87, Sess. Laws 1913, would not be affected by the adoption of the Code.

It is further urged that because by section 1 of the act it is provided that the act shall not take effect until the first Monday in January, 1915, same is in violation of that provision of the Constitution (section 58, art. 5 [Williams' Ann. Const. sec. 147A]) which requires that all acts go into effect 90 days after the adjournment of the Legislature. This section of the Constitution does not fix the date at which the legislation shall become effective, but merely provides that no act shall go into effect until after the expiration of 90 days, unless an emergency is declared by the Legislature. Numerous instances might be cited in this state where the Legislature has passed laws to go into effect at a certain date, in the future, and the validity of such legislation has not been questioned. The right to enact legislation of this kind, when not expressly prohibited, is uniformly upheld by the courts. 44 Am. Dig. tit. Stat. secs. 331, 339.

The additional objection is made to said act that the Legislature only intended to propose the act as a referendum proposition to be voted upon by the people, and that, same not having been approved by a majority vote, the act never went into effect. Section 6 of the act is criticized by counsel because of its wording. The right of the people to refer any measure is reserved by the Constitution, and the time of the election upon matters referred is fixed therein, except when the Governor or Legislature orders a special election for the express purpose of making such reference.

We do not think this section affects the validity of the act, as the Legislature did not intend to refer the act itself, but merely undertook to fix the time of the election, if referred, and the date same became effective, which matters were already provided for in the Constitution.

Seeing no valid objection to the act, we are of the opinion that the writ should issue as prayed for.

SHARP and BROWN, J. J., concur, KANE, C. J., dissents.