**HUDGINS et al. v. FOSTER et al.**

No. 18435. Opinion Filed April 10, 1928.

Rehearing Denied May 29, 1928.

(Syllabus.)

1. **Statutes—Invalidity of General Law Which Arbitrarily Excepts Certain Counties from Operation.**

Where an act of the Legislature excepts from the operation of the general laws of this state one or more counties without any fixed basis for such discrimination and no good reason is shown why all should not be subject to the same rule, it is invalid under section 59, art. 5 of the state Constitution, which provides laws of a general nature shall have uniform operation throughout the state.

2. **Same—Act Abolishing Township Government Unconstitutional.**

Chapter 107 of Session Laws 1927 abolishes township offices in 49 counties of the state and retains them in 28 counties without regard to any classification thereof, or any fixed basis or any good reasons shown; held, unconstitutional as tested by section 59 of article 5 of the Constitution.

Error from District Court, Creek County; Thos. S. Harris, Judge.

Action by Carlos E. Foster et al., constituting the Board of Commissioners of Creek County, against H. C. Hudgins et al., Board of Trustees of Sapulpa Township, Creek County. Judgment for plaintiff, and defendants bring error. Reversed, with directions to dismiss plaintiffs' petition.

Hughes & Ellinghausen and Mac. Q. Williamson, for plaintiffs in error.

W. F. Pardoe, for defendants in error.

LESTER, J. This action was begun by the board of county commissioners of Creek county, Okla., against the defendants, constituting the board of trustees of Sapulpa township, Creek county, Okla., in which the plaintiff sought by writ of mandamus to compel the latter board to turn over to the county clerk its files, books, records, accounts, money, etc., as provided by chapter 107, Session Laws 1927. Judgment was rendered by the district court in favor of the plaintiff, and the township board appeals.

The only question submitted to us upon review is whether House Bill No. 355, approved March 19, 1927, and now known as chapter 107 of the Session Laws 1927, is constitutional as tested by sections 32 and 59 of article 5 of the Constitution, and subdivision B of section 46 of article 5. It is admitted in the record that there was no compliance with section 32, article 5 of the Constitution, requiring the publication of the intended introduction in the Legislature of a special or local bill.

Preliminary to the discussion of the main issue in this case, it will be observed that courts do not concern themselves as to whether an act of the Legislature is wholesome and salutary in its operation or whether such legislation is unwise and harmful.

The judicial department of the government can interfere with legislative action only when it clearly appears that a given act thereof contravenes the basic law of the state and for that reason is unconstitutional and void. We approach the question involved herein conscious of the fact that the result will be far reaching. Not that the existence or nonexistence of township officers in the several counties is so vital to the interest and welfare of the state, but if, through error of judgment, we permit an act of the Legislature to stand that is clearly forbidden by the Constitution, legislation of an evil nature might follow through the same gateway. On the other hand, if we should destroy the act in question when, as a matter of law, the Legislature was acting within the scope of its constitutional authority, we then wrongfully impede legislative progress through judicial construction.

Practically every state in the Union has

from time to time been confronted with acts of the Legislature involving the proposition as to whether certain legislative acts were special or local, public or general, and while there have been many distinctions made between these classes of acts, yet in not a few instances the attempted distinction has left the question in a state of uncertainty and confusion. Plaintiff in error cites a large number of Oklahoma cases to support the theory that the act herein challenged is clearly unconstitutional. The defendant in error just as confidently contends that said act is constitutional and cites for our consideration a number of Oklahoma cases. Clearly, both theories cannot be correct, though it must be admitted that each have some apparent support in the decided cases. We shall review the cases cited by the contending parties here, and point out briefly the principal propositions therein, as affecting the question now before us.

Section 32, art. 5, of the state Constitution provides:

"No special or local law shall be considered by the Legislature until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper published or of general circulation in the city or county affected by such law, stating in substance the contents thereof, and verified proof of such publication filed with the Secretary of State."

It being admitted in the record that no publication of the intended introduction of the act in question was had, the legality of the act can only be sustained on the theory that said act was general in its nature, and therefore no publication was necessary. It therefore becomes necessary to note the requirements of the Constitution of this state relating to an act general in its nature. Section 59, art. 5 of the Constitution provides:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

The title of the act under consideration reads as follows:

"An act to abolish the offices of township trustee, township clerk, and township treasurer of each township in certain counties in the state of Oklahoma, and confer the powers and duties of said offices on the board of county commissioners, county clerk, and county treasurer of such counties, repealing all acts in conflict therewith, and declaring an emergency."

Section 1 of said act in part reads as follows:

"Sec. 1. That section 10996, C. O. S. 1921, be, and the same is, hereby amended to read as follows:

" 'Section 10996. That the offices of township trustee, township clerk and township treasurer of each township in the state of Oklahoma, maintaining township government, are hereby abolished, and the powers and duties of said trustee, clerk and treasurer are hereby transferred to and shall be exercised by the board of county commissioners of the several counties of the state, whose duty shall be, in addition to the other duties, required by law. * * *' "

Thus it will be noted that section 1 of said act, standing alone, would not harmonize with the title of the said act for the reason that said title states that the purpose of said act is to abolish the office of township trustee, township clerk, and township treasurer in certain counties of the state of Oklahoma. whereas section 1 of said act provides that the officers of township trustee, township clerk, and township treasurer of each township in the state of Oklahoma are abolished. However, in section 7 of said act, it is provided that the same shall not apply to certain named counties; said counties being 28 in number.

It is contended by the plaintiff in error that if the act of the Legislature in question is local or special in its nature, it must fail because no publication was had thereon as required by the Constitution, but that if the act is general in its nature, it must then fail because it does not have a uniform operation throughout the state, and for the further reason that the two different groups of counties are not separated or classified under any rule based upon population, wealth, or area, and without any reason whatever being given therefor.

The case of Johnson v. Mocabee, 1 Okla. 204, 32 Pac. 336, involved the validation of an act passed by the Oklahoma Territorial Legislature. The Legislature provided a Herd Law, but excepted Beaver county from its provision. The court on review sustained the law, holding that said law did not contravene the Act of Congress of July 30, 1886, which prohibited the passage of a local law where a general law could be made applicable.

In the case of Guthrie Daily Leader v. Cameron, 3 Okla. 677, 41 Pac. 635, the court in its sixth paragraph of the syllabus stated:

"A statute, in order to avoid a conflict with the prohibition against special legislation, must be general in its application to a class, and all of the class within like circumstances must come within its operations. If

it is limited in its application to one person or thing and is enacted for one purpose and for one person, it then becomes special in its subject-matter and operation and is void."

In the case of City of Pond Creek v. Haskell, 21 Okla. 711, 97 Pac. 338, it was there urged that the act of the Legislature was special in its nature, but the court there said:

"We believe that there is no merit in either of these points. In the first place, the act is not a special act, although it provides for a special election. It is a general act, applicable to every county in the state alike, and to every county seat in the state alike. It is no more a special act than would be a law providing for special deputy sheriffs, special policemen, or for a special jury venire, applicable generally throughout the state. Neither is it a local law requiring publication, but equally general with all other laws. In addition to this, section 6 of article 17 of the Constitution is a complete answer to both propositions, for therein is contained the foundation upon which the passage of this act is constitutionally predicated."

The case of Incorporated Town of Lehigh v. Thomas, 21 Okla. 901, 97 Pac. 362, involved the same proposition as contained in the case of City of Pond Creek v. Haskell, supra, and the court in the latter case simply readopted the rule laid down in the former case.

The case of Burks v. Walker, 25 Okla. 353, 109 Pac. 544, involved the constitutionality of the act creating and establishing a county superior court for each county of the state having a population of 30,000 and a city therein of 8,000. The court quoted with approval excerpts from the following cases:

State v. Hogan, 63 Ohio St. 202.

"It is not essential that it operate upon all the inhabitants of the state; nor is it an objection that it distinguishes a class. In the very nature of things, the law must, in dealing with persons and property and governmental divisions, group persons or objects having similar attributes into classes, and the general assembly must legislate appropriately for each, and unless it is made manifest that such legislation is directly forbidden by the Constitution, or the attempted classification is purely arbitrary, unreasonable, unjust, or capricious, the power of the general assembly to thus classify cannot be successfully challenged."

Mill v. Brown, 31 Utah, 473,

"Nor does it in any way contravene any constitutional provision, because the act devolves the duties of the juvenile courts, as exercised by them, in cities of the first and second classes, upon the district courts held outside of such cities. The act, for this reason, is not obnoxious to the uniformity clause of the Constitution. Uniformity, in the sense used in the Constitution, simply means uniformity in respect to the class into which a subject-matter may be classified, upon which the law is to operate. The children are dealt with precisely the same whether they are brought before a juvenile court in the city or before a district court in the state at large. The law operates in the one instance precisely as in the other. The only difference is that a district court in the state at large may be required to pass upon fewer cases. The law was enacted for the express purpose of relieving the district courts in cities of the burden, and thus give them the opportunity the county courts have to confine their work more strictly to contested law and equity cases."

Mr. Justice Hayes, speaking for the court, after reviewing the above authorities, stated:

"Does the superior court act come within the rule of the foregoing cases? We think it does. By its terms, it is not restricted in its operation to those counties of the state which now have a population and contain a city of the population prescribed by section 1, but any county shown by any future federal census of the state to possess the requirements provided in said section falls within the operation of the statute and a superior court is created and established in such county."

It will be observed that the court in the Burks v. Walker Case, supra, sustains the act of the Legislature for the reason that the classification was based upon population.

In the case of Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Okla. 275, 114 Pac. 333, was again involved the constitutionality of the act creating a superior court. It appears that prior to the introduction of said act due publication of same was made. The act was subject to attack, however, on the grounds that it possessed the character of a local legislation that was forbidden under the Constitution. In this case, Mr. Justice Hayes, who wrote the opinion, sustaining the validity of the act, said:

"Although the territorial jurisdiction of the superior court of Custer county is confined to the limits of a county, it is not a county court nor a part of the county government. It does not deal with the business affairs of the county; its functions are purely judicial. It exercises one of the high powers of the state government, to wit, judicial power, and, owing to the extent of its jurisdiction, is, as a court of original jurisdiction, one of high character. It has original jurisdiction in all offenses against the state committed within its territorial jurisdiction and of all civil causes, except

private (probate) matters. Its jurisdiction of subject-matter is more comprehensive than that of the district courts. The mere fact that its presiding officer is selected by a single county and is paid by that county does not make such officer a county officer. Some of the members of the House of Representatives and of the State Senate are elected by the voters of a single county; and, in the redistricting of this state for judicial purposes, it may occur that some of the district courts of the state will be confined to districts coextensive with the boundaries of a single county; but we think it could not be contended with any show of reason that such facts would render those respective officers county officers."

The case of Coyle v. Smith, 28 Okla. 121, 113 Pac. 944, involved the question as to whether certain acts of the Legislature pertaining to the location of the state capital were constitutional, and the court there said:

"An act entitled 'An act providing for the permanent location of the seat of government and capital of the state of Oklahoma, creating a board of capital commissioners and defining its powers and duties, authorizing the Governor to accept for capital purposes the proceeds of the sale of land, or donations from other sources, and declaring an emergency,' is neither a special nor a local law."

The case of Hatfield v. Garnett, 45 Okla. 438, 146 Pac. 24, involved the constitutionality of the act creating a superior court in Oklahoma county. The court quoted with approval certain excerpts from the case of Burks v. Walker, supra, and then in its own language said:

"Applying the rule as laid down by the foregoing authorities, the act in question cannot be said to be general in its nature and uniform in its operation throughout the state, for upon its face it does not operate equally upon all counties in like situation, and has as its arbitrary basis for classification the federal census of 1910, and the act is not prospective in its operation, and must therefore be held to be local and special legislation; and, section 32 of article 5 of the Constitution not having been complied with, the act must be held invalid, and the prayer of the petition denied."

The case of Leatherock v. Lawter, 45 Okla. 715, 147 Pac. 324, involved the abolition of the superior court of Custer county, and the same learned member of the court, to wit, Mr. Justice Hardy, who wrote the case of Hatfield v. Garnett, supra, also wrote the opinion in the case of Leatherock v. Lawter, supra. We quote copiously from the latter opinion for the reason that the court in the latter case makes a distinction between it and the case of Hatfield v. Garnett, supra:

"The court did not determine in that case whether a law passed by the Legislature creating a single superior court was general or special, and did not have that question under consideration. Neither could the case of Chickasha Cotton Oil Co. v. Lamb & Tyner, supra, be said to be conclusive upon this proposition, because in that case the court expressly declined to determine whether the act then under consideration was general or special, and because of the fact that the Legislature observed all of the requirements of the Constitution contained in section 32, art. 5, thereof, for the enactment of a special and local law, and in doing so gave notice of the intended introduction of said bill. The court upheld it on that ground, saying:

" 'We prefer, however, not to decide at this time whether an act creating a court of the character here involved is local or special, for this cause has been advanced upon the docket and an early hearing given, in order to expedite a decision; and this court, with the great volume of business now pressing upon it for attention, has not been able to thoroughly examine all the authorities bearing upon such question under other Constitutions with provisions relative to the power of the Legislature to create courts similar to the provisions of the Constitution of this state, nor to consider fully the force of said provisions of our Constitution in their relation to the other provisions of the Constitution. If we assume, without deciding, that this act, in so far as it creates a court with its territorial jurisdiction confined to one county having a population not greater or unlike other counties of the state, is to that extent a local law, still this act can and should be sustained; and we, therefore, proceed in our consideration of the questions raised upon the hypothesis that said act is to this extent local.'

"The question as to whether an act creating a superior court for one county, or an act abolishing such a court, is general or local and special, is not presented squarely to the court for determination. Section 1, art. 7, Const. (section 186, Williams' Ann. Const.), provides:

" 'The judical power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law.' * * *

"If the act in question is general and is uniform in its operation, which is the true test of the character of the act, then the distinctions, we think, can be successfully maintained, and the act should be upheld. The court created by the act is not a county

court, and its officers are not officers of the county, but are state officers, and the court exercises a high jurisdiction and affects all the citizens alike coming within the jurisdiction of the court. Whether an act of the Legislature be a local or general law must be determined by the generality with which it affects the people as a whole rather than the extent of the territory over which it operates, and if it affects equally all persons who come within its range, it is neither local nor special. Applying the test to the act in question which is considered by the foregoing authorities, we think that chapter 87, Sess. Laws 1913, which repeals the act establishing a superior court in Custer county, is general in its nature and uniform in its operation, in that it affects all the citizens of the state alike so far as the exercise of its jurisdiction and power is concerned, and that by reason thereof it is not violative of section 32, art. 5, of the Constitution; and in so saying we are not unmindful of the holding in Hatfield v. Garnett and other decisions upon the question of superior courts in this state. The act upheld in Burks v. Walker, supra, was declared to be uniform in its operation, affecting all the counties alike in the different classes, and making provision for prospective changes in the population of the state, which was not the case in Hatfield v. Garnett, and for which reason said act was declared to be local and special."

It is manifest that, in the latter case, the court adopted the doctrine that the creation of a superior court or the abolition thereof by the Legislature constituted legislation of a general nature.

In the case of Diehl v. Crump, 72 Okla. 108,-179 Pac. 4, the question of the constitutionality of the act creating a superior court in Okfuskee county was before this court, and the court readopted the construction contained in the case of Leatherock v. Lawter, supra, by the use of the following language:

"In Leatherock v. Lawter, 45 Okla. 720, 147 Pac. 324, the question of whether an act establishing a superior court for a single county was a local or special law was presented squarely to this court for determination. After a careful consideration of the question the court answered the question in the negative, and also held that the act which repealed the act establishing a superior court in Custer county was general in its nature and uniform in its operation, in that it affected all the citizens of the state alike so far as the exercise of its jurisdiction and power is concerned. Whilst the writer of this opinion dissented in Leatherock Case. and still believes that legislation of this kind is purely local and special, there can be no doubt that the Leatherock Case is squarely in point here, and upholds the constitution-

ality of the section of the act creating the court. Granting, then, that section 1 of the act is general and not special or local legislation, it does not follow that the same must be said of section 14 of the act."

In the case of Chicago, R. I. & P. Ry. Co. v. Carroll, Brough, Robinson & Humphrey, 114 Okla. 193, 245 Pac. 649, this court again reannounced the rule as contained in the case of Leatherock v. Lawter, supra, and Diehl v. Crump, supra, i. e., that the statute establishing a superior court for a single county is not a local or special law within the meaning of the Constitution, but the establishing of an additional court is an act of a general nature. Therefore, it may be said that this court is now firmly fixed to the doctrine that the creation of such courts or the abolition thereof finds its sanction in section 1, art. 7, of the Constitution, and is therefore not a special or local law. In the instant case, we find no specific authority in the Constitution for similar legislation as providing for the establishment of or abolition of township officers. Section 5a of article 5 of the Constitution provides the means and methods through which counties of the state may abolish or recreate township government therein, said provision being as follows:

"Each county in the state of Oklahoma may by a majority of the legal voters of such county, voting upon the proposition, abolish township organization or government. The board of county commissioners of such county, upon a petition signed by 16 per centum of the total number of votes cast at the last general election for the county office receiving the highest number of votes, praying that the question of abolishing township organization or government be submitted to a vote of the county, shall, within 30 days after the regular meeting of such board next convening after the filing of such petition, call a special election for such purpose, or the board may in their discretion submit such question at the next general election held after the filing of such petition. If such question shall be carried, township organization or government shall cease in such county, and all the duties theretofore performed by the township officers shall be cast upon and be performed by such county officers having like duties to perform in relation to the county at large as such township officers performed in relation to the township at large. At any general election after the abolition of township organization or government the question of returning to township government may be submitted as provided for the submission of the question of abolishing such government, and if a majority of the votes cast upon such question be in favor of township government the same shall thereupon be established, and the board of county commissioners shall appoint the

full quota of township officers, who shall hold their offices and perform the duties thereof until their successors shall have been elected at the next general election and until they shall have been qualified. Except as otherwise specifically provided by this section, the law relating to carrying into effect the initiative and referendum provisions of the Constitution shall govern."

From the above provisions, it would appear that the people have elected to treat the retention or abolition of township government as a matter of local concern. In the instant case, it would appear that the Legislature attempted to apply a general law regulating the retention of township officers in one group of counties, and abolish them in another group, without any uniform classification whatever. In 1 Dillon on Municipal Corporations (5th Ed.) sec. 170, we find the following language:

"Under a prohibition of special legislation which embraces counties within its operation, a classification of counties is permissible, and a statute which applies to all counties of a legitimate class is a general and not a local law. Therefore counties may be divided into classes according to population for the purposes of assessing property for taxation; or for the purpose of regulating the compensation of county officers, and in other matters relating to the organization and government of counties where population furnishes a reasonable basis for discrimination. But a statute which excepts from the operation of the general laws one or more counties, or which makes applicable to one or more counties a rule of law which is not applicable to the others, when no good reason exists why all should not be subject to the same rule, is local and special, and is invalid under the constitutional prohibition."

In the case of Board of Com'rs of Oklahoma County v. Beaty, 67 Okla. 281, 171 Pac. 34, the court said:

"Inasmuch as this is a statute that excepts from the operation of the general law Oklahoma county, without any good reason, and in fact without any reason at all so far as we can see, it is local and special in its nature and invalid under the constitutional provision invoked."

We have carefully examined the briefs of the defendant in error and have been unable to find any legal basis to sustain the act in question. The act here under attack indiscriminately and without any reason given therefor destroys township officers in 49 counties of the state and retains them in 28 counties. There is no fixed basis whatever in the separation of the counties composing the two groups. The people, by their action, have adopted constitutional checks against the passage of certain legislation. This limitation is designed to prevent inequality, and these constitutional checks cannot be destroyed through hasty or ill-considered legislation. One of the most vital constitutional checks is against legislation of a general nature which is not uniform in its operation throughout the state. If such legislation were permitted, it can be readily seen that it may become an instrument of oppression in one portion of the state and bestow favoritism on another part. This possibility has been checked by the basic law of this state.

In our judgment the act here under consideration clearly falls within the constitutional inhibition as herein before pointed out. We are mindful that the result in so holding may prove of some inconvenience, but this inconvenience can be removed under appropriate action by the several counties as contained in section 5a of article 5 of the Constitution, supra, but whatever inconvenience may arise cannot approach the danger that may arise in the future if we should hold that the act in question is constitutional.

The judgment of the district court is reversed, with directions to dismiss plaintiff's petition.

BRANSON, C. J., MASON, V. C. J., and PHELPS, HUNT, and RILEY, JJ., concur.

Note.—See under (1) 36 Cyc. p. 1002; 6 R. C. L. p. 388; 2 R. C. L. Supp. p. 107; 4 R. C. L. Supp. p. 410.