## ROBERTS et al. v. LEDGERWOOD et al.

No. 18467.   Opinion Filed Dec. 11, 1928.

Clay M. Roper, Co. Atty., and Ed. H. Brady, Asst. Co. Atty., for plaintiffs in error.

W. H. Kornegay, for defendants in error.

HEFNER, J.   G. W. Ledgerwood and others, the defendants in error, as plaintiffs, brought an action in the district court of Craig county against J. R. Roberts and others, plaintiffs in error, as defendants. The defendants composed the board of county commissioners of Craig county. The action was brought by the plaintiffs as taxpayers and as officers of the various township boards of Craig county and sought to enjoin the defendants from discharging the duties of the various township boards and also to enjoin them from receiving any compensation for certain road duties to be performed by them. The trial court overruled the demurrer of the defendants to the petition of the plaintiffs. The defendants refused to plead further, and judgment was rendered against them. From this judgment the defendants have appealed.

The plaintiffs declared upon two causes of action. The first cause involves the constitutionality of House Bill No. 358, which was passed by the Legislature in 1927 and approved by the Governor March 18, 1927 (Session Laws 1927, p. 235). Sections 1 and 2 of said bill are as follows:

"Section 1.   That in all counties in the state of Oklahoma having a population of not less than eighteen thousand seven hundred fifty (18,750) inhabitants and not more than nineteen thousand three hundred (19,300) inhabitants, and in all counties in the state of Oklahoma having a population of not less than sixteen thousand six hundred eighty-five (16,685) inhabitants and not more than seventeen thousand five hundred ten (17,510) inhabitants, according to the last preceding federal decennial census or any future federal census, in addition to the powers and duties of the boards of county commissioners of the state of Oklahoma, it shall be the duty of said boards to oversee, supervise, and inspect all road and bridge work over which said boards have control. It shall be the duty of said boards to provide their county clerks with a map showing all the state and officially designated county

highways and such other highways as may hereafter be created by law and to cause to be indicated on said map all changes in either state, county, or such other highways provided by law, that may occur by additional mileage or deductions therefrom, as soon after making said changes as practical and convenient. Said map shall be kept on file in the office of the county clerk and subject to inspection by the public at any and all times. The boards of county commissioners shall make a quarterly report for the quarters of a year ending March. June, September, and December of each year setting forth the amount of money received by them from all sources, including money received from automobile license, gasoline tax, gross production tax, and ad valorem tax and the amount of warrants issued by them on state, county, and such other highways over which they have supervision. Said quarterly report shall be published in connection with the county commissioners proceedings.

"Section 2. In addition to the annual salary fixed by law for attending regular meetings of the board of county commissioners, each member of said board shall receive as compensation for said additional duties prescribed in section 1, the sum of five ($5.) dollars per day for each day actually and necessarily employed in performing said duties, not to exceed, however, two hundred (200) days in any one fiscal year. Each of said commissioners shall also be entitled to ten (10c) cents per mile for each mile actually and necessarily traveled by him in overseeing, viewing and inspecting road and bridge work in said counties in an amount, however, not to exceed five hundred ($500) dollars in any one fiscal year. Each county commissioner, at the time of filing his claim for road and bridge inspection or supervision and for all work performed by him in connection with same, shall have attached thereto an itemized statement of all bridges supervised or inspected. the location of same; the roads supervised and inspected; the number of miles traveled in performing said labor and the date on which same was done. Said itemized statement shall be sworn to as the law directs. Upon all road work and mileage included herein. the county commissioners shall be paid out of the 'county highway fund.' "

This act was passed as a general law. The plaintiffs assail its constitutionality on the ground that it is not a general but a local or special law and cannot be sustained as a general law. If it is in fact a special or local law. it is void because it is in contravention of section 32 of article 5 of the Constitution. which is as follows:

"No special or local law shall be considered by the Legislature until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper published or of general circulation in the city or county affected by such law, stating in substance the contents thereof, and verified proof of such publication filed with the Secretary of State."

No notice of intention to introduce the bill was published as required by the foregoing provision of the Constitution. The legality of the bill, therefore, can only be sustained on the theory that it was general in its nature and no publication was necessary. Section 59 of article 5 of the Constitution provides:

"Laws of a general nature shall have a uniform operation throughout the state and where a general law can be made applicable, no special law shall be enacted."

It is the contention of the defendants that the bill under consideration is neither special nor local, but applies to every county in the state of Oklahoma falling within the classification. The title of the bill is as follows.

"An Act relating to the county commissioners, in counties having a population of not less than 18,750 and not more than 19,300, and in counties having a population of not less than 16,685 and not more than 17,510, according to the last preceding federal decennial census or any future federal census, repealing House Bill No. 280, chapter 168, Session Laws 1925, page 271, and all laws and parts of laws in conflict herewith, and declaring an emergency."

The court takes cognizance of the counties of the state and their population, and, at the time of the enactment of House Bill No. 358, Craig county and Mayes county were the only counties coming in the purview of the classification stated. The defendants urge that this bill does not apply to Craig and Mayes counties any more than it does to any other county within the population limits as set forth. In other words, it is contended when a law applies equally to all counties within a certain population limit and provides for its application to other counties within said limit, it is neither local nor special legislation. The plaintiffs concede the Legislature may legislate upon certain subjects and in the act make the classification upon the basis of population, provided the classification is a legitimate one and not arbitrary and capricious. They urge the classification in House Bill No. 358 is arbitrary and unreasonable and used as a subterfuge for the purpose of passing an act general in form. but in reality a local and special act. and applicable only to Craig and Mayes counties.

This court, upon several occasions, has passed upon the validity of an act containing a classification of its application upon the basis of population. One of the first cases on this subject is Burks v. Walker, 25 Okla. 353, 109 Pac. 544, wherein this court in discussing special and local legislation said:

"In order for a law to be general in its nature and to have uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. * * * But where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject-matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnishes a practical and real basis for discrimination."

The first paragraph of the syllabus in the case of Hatfield v. Garnett, 45 Okla. 438, 146 Pac. 24, is as follows:

"The Legislature may classify the counties of the state on the basis of population for legislative purposes, when the classification is not arbitrary and capricious, but is founded upon real and substantial distinctions, and operates uniformly upon all counties within the different classes provided by the act."

It is true the foregoing cases involved classifications that were not prospective in operation. That is, the classification was based upon population according to a past census and no provision was made for additions to or subtractions from the class due to a change in population as shown by a future census. The classification in House Bill No. 358 is prospective as well as retrospective in its operation, since it contains the following clause: "According to the last preceding federal decennial census or any future federal census." The defendants argue this provision would prevent the bill from being local in effect.

We are unable to agree with the argument that merely because the bill contains a provision for a future census, it ceases to be a special bill. As we construe the law, the all important factor in determining whether or not a bill is local or general is the basis of classification contained therein. If the basis at the time of enactment is arbitrary and unreasonable and without proper foundation as to subject-matter, then the bill must be declared a special and local act.

The first paragraph of the syllabus in the case of Key v. Donnell, 107 Okla. 157, 231 Pac. 546, is as follows:

"The Legislature may classify the counties and cities of the state on the basis of population for legislative purposes, when the classification is not arbitrary and capricious, but is founded upon real and substantial distinctions, and the questions of population bear some reasonable, rational relation to the subject-matter."

Mr. Justice McNeill, in the well-considered opinion, quotes extensively from the case of Attorney General ex rel. Dingeman v. Lacy, (Mich.) 146 N. W. 871, wherein it is said:

" 'Considering the history of legislation under the Constitution of 1850, it is apparent that there had grown up a pernicious practice on the part of the Legislature to pass local acts. The practice was bad in two very important particulars. In the first place much of the legislation thus enacted constituted a direct and unwarranted interference in purely local affairs and an invasion of the principles of local self-government. In the second place, such legislation, affecting as it did certain limited localities in the state, the Senators and Representatives from unaffected districts were usually complaisant, and agreed to its enactment without the exercise of that intelligence and judgment which all legislation is entitled to receive from all the members of the Legislature."

In the body of the opinion of the Key Case there is a discussion of the trend toward the legislation of special acts under the heading or title of general acts. It is said:

"An examination of the Session Laws since that decision (Diehl v. Crump, 72 Okla . 108, 179 Pac. 4, decided in 1919) discloses that the Legislature has practically nullified the constitutional provisions relating to local and special legislation. under the guise and subterfuge of classification of legislative acts on the basis of population. The Legislature in 1921 passed at least 20 laws based upon the classification of population, although the acts were local and special, and each act applied to only one or two counties or cities in the state. These laws are not carried forward in the statutes, but are treated by the codifier as local and special bills. The Legislature of 1923, being the Legislature which passed the act in question, enacted more than 68 bills by classifying the same according to population under the pretense of enacting a general law, when in fact they were enacting local and special laws that applied to only one county, city, or town in the state, all of which is apparent from the acts themselves, and

would not be clearer if the name of the city or county had been written in the act."

The case of Buchanan v. State, 30 Okla. Cr. 362, 236 Pac. 903, is cited by both parties in support of their contentions. That case involved the constitutionality of chapter 199, Laws 1919, creating and relating to municipal courts in cities having more than 50,000 and less than 80,000 inhabitants. The court found the act to be general on the ground that the constitutionality of the act had been previously upheld. This court is now committed to the doctrine that the creation of such courts or the abolition thereof finds its sanction in section 1, article 7, of the Constitution, and such laws therefore are neither special nor local. This rule is announced in the recent case of Hudgins et al. v. Foster et al., 131 Okla. 90, 267 Pac. 645. However, in discussing special legislation in the body of the opinion of the Buchanan Case, supra, it is said:

"The act in its terms is general, providing that, in cities of the state having a population of more than 50,000 and not exceeding 80,000 inhabitants, as determined by the last preceding federal census, or of the last preceding special federal census, there is created a court of record, etc. The courts take judicial knowledge of the cities of the state and their population, and, at the time of the enactment in question, according to the census mentioned, Tulsa was the only city of Oklahoma coming in the purview of the classification stated, and, the classification being based on a past census, no other city in the future would fall within the act in question. So far as the act is concerned it might as well have referred to the city of Tulsa by name as to have made the classification it did, which could affect only the city of Tulsa. This the defendant argues rendered the act in question special legislation, and in conflict with the provisions of the Constitution referred to, and in support of this contention the following authorities are cited. * * * These various authorities state the general principle under the constitutional provision under consideration, and if the inhibition applies to the creation of courts, and the act in question is special legislation, it is unconstitutional; but this we think is no longer an open question. Section 1, art. 7, of the Constitution specifically confers on the Legislature power to establish courts inferior to the Supreme Court, but, even without this provision of the Constitution, the Legislature had inherent power to provide laws for the people upon proper subjects."

Dillon, in his work on Municipal Corporations, section 151, says:

"But classification by population cannot be made arbitrarily and without reason. There must be some reason in the nature of things for the distinctions adopted. The size of the municipality, as evidenced by its population, must have a reasonable relation to the subject-matter of the legislation, and must furnish some very apparent reason for legislation differing from that applicable to other municipalities having a substantial difference in population."

House Bill No. 358 related only to the boards of county commissioners of counties having a population between 18,750 and 19,300 and between 16,685 and 17,510. We are of the opinion that under the rules announced in the foregoing cases, such classification is arbitrary. The defendants have failed to point out any reason why the board of county commissioners of a county falling within the above classification should have any different duties from those devolving upon the board of a county having a slightly larger or smaller population. We are unable to see that there is any relation whatever between the subject-matter of the bill and the population classification contained therein.

We are not unmindful of the well-settled rule that all statutes are entitled to the presumption which favors their constitutionality, and when a statute is susceptible of either of two constructions, one upholding its constitutionality and the other holding it in violation of the Constitution, the statute should be held valid.

House Bill No. 358 affected but two counties out of the 77 counties in the state. As between the persons and places included within the operation of the bill and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnishes a practical and real basis for discrimination. As to the two counties affected, there is no distinctive characteristic upon which a different treatment as to them may be reasonably founded, neither is there a characteristic shown which furnishes a practical and real basis for discrimination against the other counties of the state. The classification, therefore, becomes arbitrary and without relation to the subject-matter, and fails to show that the two counties with reference to the subject-matter are in a different position than the other counties in the state. Since this is true, the act becomes local and cannot be upheld as a general law.

The second cause of action declared upon involves the constitutionality of House Bill No. 355, now chapter 107, Session Laws 1927.

This is an act to abolish the offices of township trustee, township clerk, and township treasurer of each township in certain counties of Oklahoma. This court, since the filing of the briefs herein, has filed its opinion in the case of Hudgins et al. v. Foster et al., 131 Okla. 90, 267 Pac. 645, wherein the bill in question was held unconstitutional. The syllabus in that case is as follows:

"Where an act of the Legislature excepts from the operation of the general laws of this state one or more counties without any fixed basis for such discrimination and no good reason is shown why all should not be subject to the same rule, it is invalid under section 59, art. 5, of the state Constitution, which provides laws of a general nature shall have uniform operation throughout the state.

'Chapter 107 of Session Laws 1927 abolishes township offices in 49 counties of the state and retains them in 28 counties without regard to any classification thereof. or any fixed basis or any good reasons shown; held, unconstitutional as tested by section 59 of article 5 of the Constitution."

It therefore follows that both of the acts involved herein are unconstitutional and void.

The judgment of the trial court is affirmed.

BRANSON, C. J., MASON, V. C. J., and HARRISON, LESTER, and HUNT, JJ., concur.